In the Matter of the Estate of ROLLIN A. NEWTON, Deceased. ESTHER N. FULLERTON et al., Respondents; NATHAN HILLMAN, Appellant.

Third Department, December 9, 1976

*Bennett Abrams* for appellant.

*Conboy, McKay, Bachman & Kendall (Philip A. Maphey* of counsel), for Esther Fullerton, respondent.

MAHONEY, J. The will of Rollin A. Newton, in paragraph seventeenth thereof, bequeathed the sum of $75,000 to the Marine Midland Bank-Northern, as trustee, with the direction that the trustee pay over to six named beneficiaries during their lives income from different amounts of the total investment. For our purposes we need only note that beneficiary James Elliot Newton was to receive the income for life from $15,000 of the $75,000 invested. With one exception, all trust income beneficiaries were named in paragraph eighteenth of the will as residuary legatees. The will failed to designate remaindermen of the six individual trusts created by paragraph seventeenth.

Apparently aware of this defect in the subject will, all of the residuary legatees, including James Elliot Newton, and the coexecutors, entered into a written agreement on July 29, 1960 whereby they acknowledged that each of the six separate trusts was to be for the benefit of the income beneficiary of that trust for life with each trust expiring separately at the death of the single income beneficiary. The agreement further stated that "For lack of specific remaindermen designated as such in the Will, the residuary legatees have equal vested remainders in each such separate and distinct trust". The contradiction in the contract shall be discussed later in this opinion.

On January 16, 1962 income beneficiary and residuary legatee James Elliot Newton assigned in writing any interest he possessed in the trust created under the will of Rollin A. Newton and any interest he possessed in the estate of Rollin A. Newton to Nathan Hillman, the appellant herein.

James Elliot Newton died on January 31, 1974 and upon the accounting of the trustee the Surrogate determined that the corpus of the trust established for James Elliot Newton should be divided equally between the two surviving residuary legatees and could not be paid to the appellant in accordance with the assignment dated January 16, 1962. The Surrogate held "it is obvious that James E. Newton was merely an income beneficiary of the $15,000.00 corpus constituting his trust. Upon his death, the corpus is not payable to his estate and thus cannot be payable to Nathan Hillman." This appeal ensued.

The decree of the Surrogate's Court should be reversed.

Paragraph seventeenth of the subject will is clear to the extent that the testator failed to create any future estate in any remaindermen who would take at the expiration of the prior life estates. What the testator did create in paragraph seventeenth was a reversion. A reversion is created when a person has not effectively disposed of the entire quantum of the estate he owned in the property which is the subject of the disposition. (EPTL 6-4.4; Practice Commentary by I. Leo Glasser, McKinney's Cons Laws of NY, Book 17-B, EPTL 6-4.4, p 77.) Clearly, absent the agreement of July 29, 1960, the corpus of each of the six trusts, at the death of the beneficiary of each, would have reverted to the estate of the testator and passed to the residuary legatees named in the will. Consequently, it is highly relevant that all of the parties to the

agreement, other than the coexecutors, are residuary legatees as well as income beneficiaries of the trusts. If they were income beneficiaries only, the July 29, 1960 agreement would have been a nullity. Not having any future estate beyond their life interests in the income, they could not have contracted with respect to a res they did not own or have any expectancy to receive. As residuary legatees, however, each beneficiary was indefeasibly vested with a future estate (EPTL 6-4.7) which, since the residuary legatees were identified by name, vested immediately at the testator's death *(Matter of Weaver,* 253 App Div 24; *Matter of Walker,* 85 Misc 2d 110; *Matter of Murphy,* 157 Misc 5). Future estates are descendible, devisable and alineable in the same manner as estates in possession (EPTL 6-5.1). The issue before us is not whether the residuary legatees could contract to alienate their vested interests, but, rather, turns on the construction of the agreement whereby they purported to exercise that right.

As noted earlier, the July 29, 1960 agreement is *apparently* unclear. In one part the parties agreed that each trust was to expire separately at the death of the income beneficiary. Yet, they also stated that "the residuary legatees have equal vested remainders in each separate and distinct trust." It would appear that the parties to the agreement contracted contradictorily, since there could not be any vested remainders in any of the residuary legatees in any of the six trusts if each were to "expire separately at the death of the income beneficiary." Yet, if the parties to the contract were aware, and we cannot say they were not, that in the absence of any agreement the corpus of each trust, at the death of the life income beneficiary, would revert to the estate of the testator and be distributed in accordance with paragraph eighteenth, the residuary clause of the will, then the contract may be construed in a manner that makes the apparent inconsistency compatible. Knowing there were no remaindermen who could take after the termination of each of the six life estates, and recognizing that the size of each corpus was different, the residuary legatees could have decided to share equally rather than ratably the $75,000 comprising the sum of all trusts created. Since, as we have seen, there was no impediment to alienation by the residuary legatees, each possessing a vested interest, and each having survived the testator, their contractual plan is wholly consistent with the operation of the law absent such a contract. Therefore, it was wholly proper for the beneficiar-

ies and legatees to contract to divide the total corpus of all trusts equally, after such sum became part of the testator's residuary estate. That such was their intent is buttressed by the fact that Bessie Barrett, an income beneficiary but not a residuary legatee, was not a party to the July 29, 1960 agreement. Barrett, having only a life estate in the trust created for her, could not participate in the division of her trust nor could her estate take a share of the testator's residuary estate into which her corpus would fall at her death. Thus, she was knowingly excluded as a contracting party.

Further demonstrative proof that all residuary legatees had a vested interest in the total corpus of all trusts, after the expiration of the preceding life estates, is contained in the final accounting proceedings of the trustee after the death of two income beneficiaries, both of whom were also residuary legatees. On each occasion the trustee divided the portion of the trust corpus, from which the deceased beneficiary-legatee had been receiving life income, equally among the surviving legatees *and the estate of the deceased legatee.* Thus, on each occasion the Surrogate below approved a manner of distribution of a trust corpus wholly consistent with that part of the 1960 contract giving the residuary legatees equal vested interests in each trust. This construction of the contract by the parties and the trustee, with the approval of the Surrogate, clearly indicates that each residuary legatee, or his estate, was to share equally in the total trust corpus created by paragraph seventeenth. Such a construction is entitled to great weight, particularly, as here, where it is consistent with the manner in which the corpus would have been divided absent the subject contract.

It was error for the Surrogate to give a different construction to the July 29, 1960 contract upon the death of James Elliott Newton, than it did at the two prior accountings.

The decree should be reversed, on the law and the facts, with costs payable out of the estate, and matter is remitted to Surrogate's Court, St. Lawrence County, for further proceedings not inconsistent herewith.

KOREMAN, P. J., KANE and LARKIN, JJ., concur; HERLIHY, J., concurs in the result only.

Decree reversed, on the law and the facts, with costs payable out of the estate, and matter remitted to Surrogate's

Court, St. Lawrence County, for further proceedings not inconsistent herewith.