■ CHINA PRIVATIZATION FUND (DEL), L.P., Respondent, v GALAXY ENTERTAINMENT GROUP LIMITED, Appellant. [945 NYS2d 659]—

Order, Supreme Court, New York County (Jeffrey K. Oing, J.), entered September 15, 2011, which denied defendant's motion pursuant to CPLR 3211 (a) (1) and (7) to dismiss the complaint, unanimously affirmed, with costs.

In 2006, pursuant to an indenture, defendant Galaxy Entertainment Group Limited (Galaxy) issued zero coupon convertible notes to fund the construction of a casino in China. Plaintiff China Privatization Fund (Del), L.P. (CPF), an investing partnership, purchased a $50 million note. The note did not accrue or pay interest but was convertible, at CPF's option and under certain circumstances, into shares of Galaxy stock. In February 2011, CPF exercised its conversion rights and sought to convert its note. Galaxy accepted CPF's conversion and converted CPF's note into Galaxy shares.

In March 2011, CPF commenced this breach of contract action against Galaxy, alleging that Galaxy misapplied the conversion formula set forth in the indenture, and that CPF was entitled to more Galaxy shares than were issued. Galaxy moved to dismiss the complaint, arguing that it faithfully followed the indenture's conversion methodology. CPF opposed the motion, asserting that Galaxy misconstrued the plain language of the indenture. In the alternative, CPF argued that the relevant terms of the indenture are ambiguous warranting denial of the motion. The motion court denied the motion to dismiss and we now affirm.

"[A] written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms" (*Greenfield v Philles Records*, 98 NY2d 562, 569 [2002]). An agreement is unambiguous if the language used "has a definite and precise meaning, unattended by danger of misconception in the purport of the [agreement] itself, and concerning which there is no reasonable basis for a difference of opinion" (*id.* [internal quotation marks omitted]). On the other hand, a contract is ambiguous if "on its face [it] is reasonably susceptible of more than one interpretation" (*Chimart Assoc. v Paul*, 66 NY2d 570, 573 [1986]). "If the court concludes that a contract is ambiguous, it cannot be construed as a matter of law, and dismissal . . . is not appropriate" (*Telerep, LLC v U.S. Intl. Media, LLC*, 74 AD3d 401, 402 [2010]).

Because the conversion methodology in the indenture is reasonably susceptible of more than one interpretation, the motion to dismiss was properly denied. The indenture contains a complex formula for determining the number of shares to which

a noteholder is entitled upon conversion. The number of shares to be issued is calculated by dividing the principal balance of the note, in this case $50 million, by the "Conversion Price." The "Conversion Price" is the "then applicable Revised Conversion Price translated into U.S. dollars at the Fixed Exchange Rate." The "Revised Conversion Price" is the "Revised Reference Price multiplied by 1.20." Thus, the "Conversion Price" ultimately depends on the "Revised Reference Price."

The "Revised Reference Price" is determined pursuant to Section 13.08 of the indenture, which provides, in relevant part: "(a) If the average Market Price for the Shares for any of the eight 13-consecutive week periods (each, a **'Relevant Period'**) beginning on the Issue Date and ending prior to the second anniversary of the Issue Date is lower than the then applicable Initial Reference Price, then the then applicable Initial Reference Price shall be revised at the beginning of the next Relevant Period and be for such next Relevant Period the greater of (x) such average Market Price for the preceding Relevant Period and (y) the Floor Price, and such then applicable Initial Reference Price as so revised shall constitute the Revised Reference Price for such next Relevant Period, subject to adjustment pursuant to Section 13.09 (h) and Section 9.01" The "Initial Reference Price" is defined as "HK$7.80 per Share initially, subject to adjustment pursuant to Section 13.09 and Section 9.01 (but without giving effect to any adjustment pursuant to Section 13.08)." The parties agree that there were no adjustments pursuant to the provisions set forth in sections 13.09 and 9.01.

The dispute between the parties centers around whether the "Initial Reference Price" remained a constant figure at HK$7.80 per Share during the eight Relevant Periods or was a changing figure based on successive applications of the formula in section 13.08 (a). Under CPF's interpretation, the "Initial Reference Price" was not constant, but rather, changed with each quarterly computation, and reflected the cumulative changes of all the past quarterly periods. Under Galaxy's interpretation, the "Initial Reference Price" remained constant, unless adjusted pursuant to the provisions of sections 13.09 and 9.01, which are not applicable here. According to Galaxy, the definition of "Initial Reference Price" mandates that any revisions made to the Initial Reference Price pursuant to section 13.08 (a) do not adjust the Initial Reference Price for purposes of determining the Revised Reference Price for subsequent Relevant Periods.

Each of the parties' interpretations finds support in the language of the indenture. CPF points to the repeated use of the term "then applicable Initial Reference Price" in support of

its argument that it is a changing figure. Section 13.08 (a) explicitly provides that if the average market price is lower than "the *then applicable* Initial Reference Price, then the *then applicable* Initial Reference Price *shall be revised* at the beginning of the next Relevant Period and [*shall*] *be* for such next Relevant Period" (emphasis added). This section further provides that "such then applicable Initial Reference Price *as so revised* shall constitute the Revised Reference Price for such next Relevant Period" (emphasis added). Thus, this language indicates that the Initial Reference Price can change, and that the "then applicable Initial Reference Price as so revised" rolls forward to the next Relevant Period.

Galaxy argues that the term "then applicable" merely recognizes that adjustments to the Initial Reference Price may be made pursuant to sections 9.01 and 13.09. Even if this interpretation is a reasonable one, we cannot say that CPF's contrary interpretation is unreasonable. CPF points out that the definition of "Initial Reference Price" already incorporates any "adjustment pursuant to Section 13.09 and Section 9.01." Thus, there arguably would be no need to use the phrase "then applicable" if the only adjustments contemplated were pursuant to those sections. Furthermore, section 13.08 (a) expressly provides that the "then applicable Initial Reference Price as so revised" is itself further "subject to adjustment" pursuant to sections 13.09 and 9.01.

In arguing that the Initial Reference Price remains constant, Galaxy points out that the indenture defines that term as "HK$7.80 per Share initially, subject to adjustment pursuant to Section 13.09 and Section 9.01 (but without giving effect to any adjustment pursuant to Section 13.08)." Thus, Galaxy argues that the revision mechanism in section 13.08 (a) cannot affect the Initial Reference Price. However, as CPF argues, the definition uses the term "initially," suggesting that section 13.08 cannot cause a change to the Initial Reference Price "initially," but can be used to alter that price in subsequent periods.

Suffice it to say, the indenture is not a model for contract drafting, and its language can be reasonably interpreted to support both Galaxy's and CPF's position. Because neither party has established that its interpretation is correct as a matter of law, the motion to dismiss was properly denied. "While it is not this Court's preference to find a triable issue of fact concerning the terms of a written agreement between two sophisticated contracting parties, our options are limited where the contractual provisions at issue are drafted in a manner that fails to eliminate significant ambiguities" (*NFL Enters. LLC v Comcast Cable Communications, LLC*, 51 AD3d 52, 61 [2008]).

We have considered Galaxy's remaining contentions and find them unavailing. Concur—Mazzarelli, J.P., Acosta, Renwick and Richter, JJ.