[985 NE2d 893, 962 NYS2d 583]

FUNDAMENTAL LONG TERM CARE HOLDINGS, LLC, et al., Appellants, v CAMMEBY'S FUNDING LLC et al., Respondents.

Argued January 10, 2013; decided February 14, 2013

POINTS OF COUNSEL

*Arent Fox LLP*, New York City (*Allen G. Reiter* and *Asari Aniagolu* of counsel), and *DLA Piper LLP (US)* (*Anthony P. Coles* and *Shand S. Stephens* of counsel) for appellants. I. The Appellate Division's order disregards the law governing limited liability companies. (*Hart v General Motors Corp.*, 129 AD2d 179; *Kaplan v Lippman*, 75 NY2d 320; *Torres v D'Alesso*, 80 AD3d 46, 15 NY3d 951; *Tropical Leasing v Fiermonte Chevrolet*, 80 AD2d 467; *Procopis v G. P. P. Rests.*, 43 AD2d 974; *TVT Records v Island Def Jam Music Group*, 412 F3d 82; *Nau v Vulcan Rail & Constr. Co.*, 286 NY 188; *Shutter v Hillside Med. Inv. Corp.*, 192 AD2d 699; *Nassau v Associates 66*, 149 AD2d 489; *Duration Mun. Fund, L.P. v J.P. Morgan Sec. Inc.*, 25 Misc 3d 1203[A], 2009 NY Slip Op 51962[U].) II. Both the operating agreement and the option must be enforced to avoid an "unreasonable" and "absurd" result. (*Fleischman v Furgueson*, 223 NY 235; *Metropolitan Life Ins. Co. v Noble Lowndes Intl.*, 84 NY2d 430; *ERC 16W Ltd. Partnership v Xanadu Mezz Holdings LLC*, 95 AD3d 498; *Superb Gen. Contr. Co. v City of New York*, 39 AD3d 204; *Tibbetts Contr. Corp. v O & E Contr. Co.*, 15 NY2d 324; *Schoellkopf v Coatsworth*, 166 NY 77; *Gillet v Bank of Am.*, 160 NY 549; *Matter of Lipper Holdings v Trident Holdings*, 1 AD3d 170; *Greenwich Capital Fin. Prods., Inc. v Negrin*, 74 AD3d 413.) III. *Torres v D'Alesso* (80 AD3d 46 [1st Dept 2010]) should not be expanded to exclude consideration of the terms of an operating agreement. (*Hicks v Bush*, 10 NY2d 488; *Procopis v G. P. P. Rests.*, 43 AD2d 974; *Tropical Leasing v Fiermonte Chevrolet*, 80 AD2d 467; *Mack-Lowe v Picault-Cadet*, 33 AD3d 504.)

*Dechert LLP*, New York City (*Steven A. Engel* and *Andrew J. Levander* of counsel), for respondents. I. This Court lacks jurisdiction over the non-final order. (*Matter of Jazmin A.*, 15 NY3d 439; *Burke v Crosson*, 85 NY2d 10; *Doyle v Allstate Ins. Co.*, 1 NY2d 439.) II. If the Court reaches the merits, the decision below should be affirmed. (*W.W.W. Assoc. v Giancontieri*, 77 NY2d 157; *Vermont Teddy Bear Co. v 538 Madison Realty Co.*, 1 NY3d 470; *Matter of Wallace v 600 Partners Co.*, 86 NY2d 543; *Braten v Bankers Trust Co.*, 60 NY2d 155; *Jarecki v Shung Moo Louie*, 95 NY2d 665; *Fineman Family LLC v Third Ave. N. LLC*, 90 AD3d 549; *British Am. Dev. Corp. v Schodack Exit Ten, LLC*, 83 AD3d 1247; *Nathanson v Nathanson*, 20 AD3d 403; *Kaplan v Lippman*, 75 NY2d 320; *Silverstein v United Cerebral Palsy Assn. of Westchester County*, 17 AD2d 160.)

**OPINION OF THE COURT**

READ, J.

This lawsuit is one of several between business entities controlled by plaintiffs Leonard Grunstein and Murray Forman and defendant Rubin Schron (*see also Schron v Troutman Sanders LLP*, 20 NY3d 430 [2013] [decided today]). Cammeby's Funding LLC (Cam Funding) is a limited liability company managed by Schron, a real estate investor; Fundamental Long Term Care Holdings, LLC (Fundamental) is a limited liability company whose sole members are Grunstein—formerly Schron's attorney—and Forman—formerly Schron's investment banker.

In 2003, SWC Property Holdings LLC (SWC), another company controlled by Schron, acquired the facilities and real estate occupied by a string of 26 nursing homes and, through subsidiaries, leased these properties to an independent operating company. In 2006, Grunstein and Forman purchased all of the issued and outstanding capital stock of these nursing homes, having formed Fundamental in December 2005 for the purpose of owning companies that manage health care facilities. Grunstein and Forman each contributed $50 in equity for a half interest in Fundamental; they paid $10 million for the stock, financed by debt. Additionally, Schron executed a covenant not to sue on any claims that SWC, the landlord, might have against the nursing homes.

On July 1, 2006, Fundamental and Cam Funding entered into an option agreement entitling Cam Funding (or its designee) to acquire one third of Fundamental's membership units for a strike price of $1,000, provided the option was exercised on or before June 9, 2011. This agreement was signed by Forman, as manager of Fundamental, and was accepted and agreed to by Schron, as manager of Cam Funding, and Grunstein and Forman, the sole members of Fundamental.

The agreement's preamble states that the option was given "[i]n consideration of the mutual covenants and agreements hereinafter set forth, and for $10 and other good and valuable consideration (the receipt and adequacy of which is hereby acknowledged by the Parties [i.e., Fundamental, Grunstein, Forman and Cam Funding])." Section 3 provides that "on the requested closing date . . . [Fundamental] *shall* execute and deliver to [Cam Funding] . . . (i) certificates for the Acquired Units, and (ii) all resolutions, documents and instruments necessary or required to properly issue to [Cam Funding] all of the

Acquired Units" (emphasis added). Section 4 specifies that, upon exercise of the option, Cam Funding "*shall* be admitted as a member of [Fundamental]" (emphasis added).

Sections 5 and 6 obligate Fundamental, Grunstein and Forman to facilitate, and prohibit their interference with, Cam Funding's exercise of the option. Specifically, in section 5, Fundamental agreed not to

> "cause, suffer or permit any of its subsidiaries to, enter into any agreement or commitment with any unitholder, subscriber, officer, director or employee or other person that would conflict with or interfere with any of the rights of [Cam Funding] under this Agreement, including (without limitation) the exercise of the Option, and any such conflicting agreement or commitment shall be deemed void and of no force or effect."

Similarly, in section 6, Grunstein and Forman, as the sole members of Fundamental, promised not to take any action inconsistent with the option and, upon Cam Funding's exercise of it, to

> "(a) consent to the issuance of the Acquired Units to [Cam Funding], (b) consent to the admission of [Cam Funding] as a member of [Fundamental], and (c) *cause* [Fundamental] to carry out its obligations herein and to *execute and deliver such amendments and schedules to the Operating Agreement* of [Fundamental] to reflect the issuance of the Acquired Units to [Cam Funding]" (emphases added).

Finally, section 15 sets out a standard merger clause, stating that there was no "agreement or understanding (whether written, oral, express, implied or otherwise) . . . respecting any of the matters contained in this Agreement except for those expressly set forth in this Agreement." As a result, the option agreement encompassed

> "the entire agreement and understanding of the Parties [i.e., Fundamental, Grunstein, Forman and Cam Funding], and supersedes and completely replaces all prior and other representations, warranties, promises, assurances and other agreements and understandings (whether written, oral, express, implied or otherwise) among the Parties with respect to the matters contained in this Agreement."

On December 20, 2010, Cam Funding notified Fundamental in writing that it was exercising the option, designating Quality Health Services LLC to acquire the ownership interest, specifying January 20, 2011 at its lawyers' offices as the date and place of closing, and enclosing a certified check for $1,000. On January 18, 2011, Fundamental responded that, pursuant to its operating agreement, "no membership units in Fundamental can be issued to [Cam Funding] until . . . [Cam Funding] provides the required capital contribution of 'at least the fair market value' of its proposed interest, which is 33.33%."

Fundamental relied on paragraph 3.3 of its operating agreement, dated December 22, 2005 and amended and restated September 3, 2009, which states that

> "[a]dditional Interests shall not be issued except upon the consent of the Board of Managers [i.e., Grunstein and Forman] and the unanimous consent of the Members [i.e., Grunstein and Forman]. Upon the issuance of any additional Interests, the Person to whom such Interests are issued shall make a capital contribution to the Company in respect of such issuance in an amount equal to at least the fair market value per Interest so issued."

At the time Cam Funding exercised the option, the market value of a one-third interest in Fundamental was estimated to be more than $33 million.

By complaint dated February 7, 2011, Fundamental sought a declaration that Cam Funding was bound by the membership requirements in the operating agreement to "make the requisite capital contribution upon the issuance of any additional interests in Fundamental." On or about March 1, 2011, Cam Funding filed an answer, affirmative defenses and counterclaim for breach of contract, along with a motion for summary judgment; Fundamental thereafter cross-moved for summary judgment.

By decision and order entered on August 29, 2011, Supreme Court disposed of the motion and cross motion, ruling that the option agreement unambiguously granted Cam Funding the right to acquire a one-third interest in Fundamental upon payment of the strike price of $1,000. The judge determined that enforcing paragraph 3.3 of the operating agreement, as Fundamental advocated, would violate section 5 of the option

agreement by "allow[ing] a subsequent agreement—the Operating Agreement—to interfere with Cam Funding's rights under the terms of the Option Agreement." Supreme Court interpreted section 6 of the option agreement as evidence that "the parties contemplated a future operating agreement and intended that the Operating Agreement yield to the Option Agreement." Indeed, he opined, to the extent that paragraph 3.3 "prohibit[ed] issuance of the requisite number of units to Cam Funding upon exercise of the option at the option strike price, it [was] incumbent on [Fundamental] under the terms of Section 6 of the Option Agreement to amend the Operating Agreement and its schedules to enable Fundamental to issue such units to Cam Funding."

Consistent with Supreme Court's decision, Cam Funding proposed an order directing the clerk to enter judgment declaring that Fundamental was required to "close on the Option promptly following the completion of all required regulatory filings and approvals, if any." The judge signed this order, which was entered on October 6, 2011. Fundamental then appealed; on December 13, 2011, the Appellate Division issued a stay of Supreme Court's orders pending hearing and determination of the appeal (2011 NY Slip Op 92223[U] [2011]).

In a decision issued February 7, 2012, the Appellate Division affirmed (92 AD3d 449 [1st Dept 2012]). The Court concluded that "[r]egardless of which document was executed first," the option agreement unambiguously entitled Cam Funding to acquire one third of Fundamental's membership units for $1,000 "without the need for any capital contribution" (id. at 450). The Court further noted that the option agreement's integration clause "bar[red] parol evidence of the parties' intent and of any other agreements or understandings" (id.). On May 22, 2012, the same panel denied Fundamental's motion for leave to appeal, and granted Cam Funding's cross motion to vacate the stay (2012 NY Slip Op 73848[U] [2012]). Fundamental then asked us for permission to appeal, and on June 5, 2012, a Judge of this Court granted an interim stay pending the motion's resolution. On September 11, 2012, we granted Fundamental's motions for leave to appeal and a stay (19 NY3d 1012 [2012]). We now affirm.

As an initial matter, Fundamental and Cam Funding agree that the parol evidence rule has no bearing on this case. Fundamental does not argue that the operating agreement should be looked at to explain ambiguous terms in the option

agreement (*see Hicks v Bush*, 10 NY2d 488, 491 [1962] ["Parol testimony is admissible to prove a condition precedent to the legal effectiveness of a written agreement, if the condition does not contradict the express terms of such written agreement" (citations omitted)]). Instead, Fundamental takes the position that the two agreements must be read together as creating a "two-step process"—i.e, under the option agreement, Cam Funding pays $1,000 for the right to acquire a one-third interest in Fundamental, a privately held company, and the operating agreement governs the terms for issuance of membership units reflecting this interest if the option is exercised; namely, a capital contribution equivalent to the one-third interest's fair market value.

In support of its position, Fundamental cites several cases in which courts have considered multiple agreements together, even though they were executed on different dates and/or by different parties. In these cases, however, the agreements are inextricably intertwined, unlike the option agreement and the operating agreement in this case (*see e.g. Nau v Vulcan Rail & Constr. Co.*, 286 NY 188, 197 [1941] [three agreements "executed at substantially the same time, related to the same subject-matter, . . . must be read together as one . . . since they were to effectuate the same purpose and formed a part of the same transaction"]; *TVT Records v Island Def Jam Music Group*, 412 F3d 82, 89 [2d Cir 2005] [two agreements were both "intended to effectuate . . . the production and release of [an] album," and one of them explicitly required honoring all terms and conditions of the other]). Further, the breach of either the option agreement or the operating agreement would not undo the obligations imposed by the other (*see TVT Records*, 412 F3d at 90). And if it were, in fact, the case that the parties meant for fair market value to be due upon Cam Funding's exercise of the option, this is not the sort of term these sophisticated, counseled parties would have reasonably left out of the option agreement. The mere reference in the option agreement to the operating agreement is not enough to evidence clear intent for these two separate contracts to be read as one.

Finally, Fundamental argues that the payment of $1,000 for a membership interest valued at $33 million is commercially unreasonable. First, an inquiry into commercial reasonableness is only warranted where a contract is ambiguous. Here, the option agreement is unambiguous, and therefore its reasonableness is beside the mark. In any event, parties enter into option

agreements for all sorts of reasons, and, as noted earlier, this agreement was executed by sophisticated, counseled parties.

Accordingly, the order of the Appellate Division should be affirmed, with costs.

Chief Judge LIPPMAN and Judges GRAFFEO, SMITH and PIGOTT concur; Judge RIVERA taking no part.

Order affirmed, with costs.