Order, Supreme Court, New York County (Melvin L. Schweitzer, J.), entered September 7, 2011, which granted defendants’ motion to dismiss the complaint, unanimously reversed, on the law, without costs, and the motion denied. Order, same court and Justice, entered September 6, 2011, which denied plaintiffs motion seeking declaratory relief, unanimously affirmed, without costs.
This case involves a dispute between two sets of creditors, senior lenders (plaintiff) and junior or mezzanine lenders, as to who has priority to payments personally guaranteed by defendants Lightstone and Lichtenstein but capped at $100 million, under loan and guaranty agreements (made to both sets of lenders) and an intercreditor agreement (IC Agreement), in the event of default by the borrowers.
There are provisions in the various agreements, all of which *459 were executed on the same day, that are not fully consistent with each other. “It is a cardinal rule of contract construction that a court should avoid an interpretation that would leave contractual clauses meaningless. Stated otherwise, [c]ourts are obliged to interpret a contract so as to give meaning to all of its terms” (150 Broadway N.Y. Assoc., L.P. v Bodner, 14 AD3d 1, 6 [1st Dept 2004] [internal quotation marks and citation omitted]).
Here, while the court correctly found that the guaranty claims were excluded from the general subordination provisions of the IC Agreement, section 6 (b), which specifically applies to guaranty claims, still allows junior lenders to collect on such claims only if the senior lender is not also exercising rights against the guarantors. Section 6 (b), however, provides an exception to the limit on a junior lender’s right to enforcement, so long as the right is being exercised in connection with any junior lender pursuing its rights under section 15 (q) of the IC Agreement.
Pursuant to section 15 (q), which applies “[f]or as long [as] any Junior Loan remains outstanding,” Senior lender and junior lenders agreed that the $100 million guaranty cap “shall be applied on a ratable pro rata basis among each of the junior loans,” and that, “[notwithstanding anything to the contrary which may be contained in th[e] [IC] Agreement,” each junior lender could commence and prosecute a guaranty claim, as well as retain any recovery therefrom, so long as it complied with section 15 (q).
The parties agree that there was only one guaranty pot, and that it was capped at $100 million. Thus, if the junior lenders are correct and section 15 (q) constituted a waiver by the senior lender of its rights to any claim on the guaranty cap, then section 6 (b)’s guaranty cap subordination language is superfluous. If, however, the senior lender is correct and section 15 (q) applies only to junior lenders, then that section’s language allowing junior lenders to actually collect guaranty claim monies is rendered superfluous. Moreover, while it may be true that section 15 (q) could reference only those amounts the junior lenders are entitled to collect when all of senior lender’s debts have been satisfied, the junior lenders’ interpretation—that senior lender contracted away its right to the guaranty cap—is equally plausible.
Because the IC Agreement’s clauses concerning the lenders’ rights to prosecute and collect on guaranty claims are “ambiguous, [they] cannot be construed as a matter of law, and dismissal . . . [was] not appropriate” (China Privatization Fund *460 [Del], L.P. v Galaxy Entertainment Group Ltd., 95 AD3d 769, 770 [1st Dept 2012] [internal quotation marks omitted]).
Furthermore, no reading of the IC Agreement gives the junior lenders an exclusive right to bring claims against the guarantors, or granted them exclusive rights to the guaranty cap. Accordingly, the motion court erred in finding that plaintiff lacked standing to bring its claims against the guarantors.
We have considered the remaining arguments and find them unavailing. Concur—Tom, J.P., Andrias, Freedman, Roman and Gische, JJ.