■ ANDREW SASSON et al., Appellants, v TLG ACQUISITION LLC et al., Respondents. [9 NYS3d 2]—

Order, Supreme Court, New York County (Salliann Scarpulla, J.), entered February 7, 2014, which granted defendants' motion to dismiss the complaint, reversed, on the law, without costs, and the motion denied.

Plaintiffs sought to accelerate the payment of the notes and to increase the interest rate due, based on a "Change of Control" in the board of a nonparty entity. The notes provided that a "Change of Control" brought about by "the Permitted

Investors" would not constitute a "Change of Control," but did not define the term "Permitted Investors." The motion court correctly read the notes in conjunction with a contemporaneous credit agreement that defined "Permitted Investors," since the notes provided that a default under the agreement would also constitute a default under the notes (*see Nau v Vulcan Rail & Constr. Co.*, 286 NY 188, 197 [1941]; *Fundamental Long Term Care Holdings, LLC v Cammeby's Funding LLC*, 20 NY3d 438, 445 [2013]). That the notes did not incorporate the agreement by reference does not alter this conclusion (*see Brax Capital Group, LLC v WinWin Gaming, Inc.*, 83 AD3d 591, 592 [1st Dept 2011]).

However, in interpreting the term "Permitted Investors," the court relied unduly on the rule of construction set forth in the notes that made singular and plural interchangeable, and thus erred in finding the term to be singular in this instance. "Permitted Investors" was defined as "OTK Associates, David T. Hamamoto and Yucaipa." The definition was in the conjunctive, unambiguous, and not subject to any rule of construction in the relevant documents or to any special commercially reasonable interpretation. It plainly required all three of those investors to take over the entity's board for there to be no "Change of Control." Therefore, the successful insurgency by OTK Associates alone was a "Change of Control" within the meaning of the notes.

We fail to see how the provision in question here is ambiguous. A contract is not rendered ambiguous simply because one of the parties attaches a different, subjective meaning to one of its terms (*Bajraktari Mgt. Corp. v American Intl. Group, Inc.*, 81 AD3d 432 [1st Dept 2011]). The definition of "Permitted Investors" as "OTK and [two others]," using the conjunctive "and" and not the disjunctive "or," is plainly interpreted in the plural, because otherwise it would have stated "a Permitted Investor" not "the Permitted Investors" (*see e.g. Progressive Northeastern Ins. Co. v State Farm Ins. Cos.*, 81 AD3d 1376, 1378 [4th Dept 2011], *appeal dismissed* 16 NY3d 891 [2011], *lv denied* 17 NY3d 849 [2011]). Thus, because there is no ambiguity in the word "and" in the definition of "Permitted Investors," there is no reason to resort to rules of contract construction based on contractual provisions or context, as our concurring colleague does (*see Greenfield v Philles Records*, 98 NY2d 562, 569 [2002]; *Deerkoski v East 49th St. Dev. II, LLC*, 120 AD3d 1387 [2d Dept 2014]). Concur—Renwick, J.P., Moskowitz and DeGrasse, JJ.

Saxe and Richter, JJ., concur in a separate memorandum by

Saxe, J., as follows: The determination of this appeal turns on the most minor of terminology in the promissory notes under consideration. The provision in question defines what would constitute a change of control of the defendant company such as would entitle plaintiffs, as the company's noteholders, to demand the acceleration of repayment. The motion court's reading of the change of control provision was that the election of the new board did not constitute a change of control as defined in the notes; it therefore dismissed the complaint. The majority construes the term differently, finding that a change of control was established by the facts alleged in the complaint, and therefore reverses and reinstates the complaint. I agree with the reading of the provision made by the motion court. However, rather than suggesting that we should affirm, I suggest that in view of our two reasonable but opposite views of what is intended by the change of control provision, the intended meaning of the term should be treated as ambiguous, rather than determined as a matter of law in this context. I therefore concur in the reinstatement of the complaint, but based on this alternative reasoning.

Plaintiffs Andrew Sasson and Andy Masi, who own and operate nightclubs, sold their interests in various companies to Morgans Hotel Group Co. (MHGC) through its subsidiary, TLG Acquisition LLC, pursuant to a master purchase agreement (MPA). The MPA defined the "transaction documents" as including the MPA, two promissory notes in the aggregate amount of $18 million, guaranties by MHGC, a consulting services agreement with plaintiff Sasson, any other written document signed by the parties which is expressly identified as a "Transaction Document," and any exhibits or attachments to the MPA.

The maturity date of the notes was November 30, 2015, with interest payable at 8% until November 30, 2014 and thereafter at 18%. However, the notes were required to be prepaid if a "Note Acceleration Event" occurred, and, in the event of a defined "change of control" in MHGC, repayment was required within 40 days of notice. Failure to prepay would constitute a default, increasing the interest to 16% until November 30, 2014, and thereafter to 20%.

The notes and guaranties defined the required "change of control" in MHGC as: "(a) the acquisition of ownership, directly or indirectly, beneficially or of record, by any Person or group [within the meaning of the 1934 SEC Act and rules], of voting stock of MHGC representing more than 50% of the aggregate total voting power [of MHGC voting stock], or (b) *the occupation of a majority of the seats (other than vacant seats) on the*

*board of directors of MHGC by individuals who were neither (i)
nominated by the board of directors of MHGC or the Permitted
Investors* nor (ii) appointed by directors so nominated"
(emphasis added). So, a change in the identities of a majority
of the board's seats would qualify as a "change of control," *unless* those individuals were nominated by the "Permitted Investors" or the board of directors of MHGC, or appointed by directors so nominated.

While the MPA, the notes and the "transaction documents"
did not define the term "Permitted Investors," the Morgans
Credit Agreement did; it stated that " 'Permitted Investors'
means OTK Associates, David T. Hamamoto and Yaucaipa."
And, that definition is appropriately incorporated into the
terms of the parties' agreement. Although the Morgans Credit
Agreement was neither listed in the MPA among the "transaction documents" nor expressly labeled a "transaction document," the notes themselves expressly define the "Morgans
Credit Agreement" and refer to it by providing that one of the
grounds upon which the notes would be accelerated was acceleration of the indebtedness under the Morgans Credit Agreement.

The final relevant provision of the agreement appears in two
places in the notes, essentially providing that when construing
any terms used in the note, "the plural shall include the
singular, and the singular shall include the plural."

The circumstance that forms the basis for this litigation is
the election of a new slate of directors to MHGC. Specifically,
on June 14, 2013, following a proxy battle, the shareholders
elected the slate of new directors nominated by OTK Associates
(OTK), one of the listed "Permitted Investors" named in the
Morgans Credit Agreement. Following this election, plaintiffs
demanded repayment of the notes in reliance on the "change of
control" provision. Morgans refused to pay, and failed to do so
before the 40-day deadline, and plaintiffs then commenced this
action, alleging breach of the notes and guaranties.

Defendants moved to dismiss, contending that the election of
the new slate of directors did not qualify as a change of control
within the meaning of the notes because the directors were
nominated by "Permitted Investors." The motion court agreed,
and granted the motion. The majority now reverses, reading
the "Permitted Investors" exception to the change of control
provision to apply only when all three "Permitted Investors"
named in the Morgans Credit Agreement jointly nominated the
new directors.

The majority says that the motion court unduly relied on the

rule of construction set forth in the notes that made singular and plural interchangeable, while failing to take into account that the term "Permitted Investors" was defined in the conjunctive as "OTK Associates, David T. Hamamoto *and* Yucaipa" (emphasis added). The majority agrees with plaintiffs that for the exclusion to apply, the new board majority must have been nominated by all three "Permitted Investors," acting collectively.

In my view, the majority places excessive emphasis on the use of the word "and" in the definition of "Permitted Investors" in the Morgans Credit Agreement, when the purpose of that definition is merely to list the three entities that qualify as "Permitted Investors." Our focus should be on the phrasing in the notes that excludes a "change of control" based on a new board majority that was nominated by "the Permitted Investors."

In addition to the use of the conjunctive "and" in the Morgans' Credit Agreement definition of "Permitted Investors," the majority relies on the use of the definite article and the plural phrasing of the words "the Permitted Investors" in the notes, to conclude that the "change of control" exception must be limited to situations where the nomination of the new directors was by all three listed "Permitted Investors," acting as one unit. However, this interpretation ignores the notes' two provisions specifying that the plural form shall include the singular, and the additional directive that any capitalized term shall be equally applicable to both the singular and plural forms of the terms defined. Applying those contract provisions, the reference to "the Permitted Investors" should be interpreted to refer equally to a single Permitted Investor. Viewed this way, the language of the notes enables any of the three "Permitted Investors" to nominate a new board without triggering the change of control provision. Furthermore, I agree with the motion court's observation that given the improbability of three unrelated "Permitted Investors" acting collectively to nominate board members, common sense informs us that any intended requirement that they act collectively would be specifically and clearly stated.

A contract is ambiguous if "on its face [it] is reasonably susceptible of more than one interpretation" (*Chimart Assoc. v Paul*, 66 NY2d 570, 573 [1986]; *China Privatization Fund [Del], L.P. v Galaxy Entertainment Group Ltd.*, 95 AD3d 769, 770 [1st Dept 2012]). Since the provision in question here is reasonably susceptible of more than one interpretation, its meaning may not properly be determined as a matter of law. Accordingly, I

agree with the majority's reinstatement of the complaint, but disagree with the majority's determination construing the notes' change of control provision as a matter of law.