■ NATIONSTAR MORTGAGE LLC, Doing Business as CHAMPION MORTGAGE COMPANY, Appellant, v ANNE C. FULLAM GOEKE, Respondent, et al., Defendants. [57 NYS3d 223]—

McCarthy, J.P. Appeal from an order of the Supreme Court (Nichols, J.), entered November 4, 2015 in Columbia County, which, among other things, granted defendant Anne C. Fullam Goeke's cross motion for summary judgment dismissing the complaint against her.

In June 2008, defendant Anne C. Fullam Goeke (hereinafter

defendant) and her husband executed a home equity conversion mortgage (hereinafter the mortgage), more commonly referred to as a reverse mortgage,[1] to secure an adjustable rate note signed solely by defendant's husband. Under identical terms contained in both the note and the mortgage, the lender may require payment in full if a "[b]orrower dies and the [p]roperty is not the principal residence of at least one surviving [b]orrower." Defendant's husband died in September 2012. In October 2012, plaintiff sent a letter to defendant's husband's estate, demanding payment of the loan in full in the amount of $152,813.65. In June 2013, plaintiff commenced this foreclosure action, naming, among others, defendant. Thereafter, plaintiff moved and defendant cross-moved for summary judgment. Supreme Court denied plaintiff's motion and granted defendant's cross motion for summary judgment dismissing the complaint against her. Plaintiff appeals and contends that Supreme Court erred in granting defendant's cross motion and denying its motion for summary judgment as to foreclosure.

As an initial matter, Supreme Court erred as a matter of law in its conclusion that 12 USC § 1715z-20 (j) prohibits plaintiff's foreclosure on the property due to defendant's residency there. That provision refers to conditions that prevent the Secretary of Housing and Urban Development from insuring a home equity conversion mortgage (see 12 USC § 1715z-20 [j]). Whether the mortgage at issue is insurable pursuant to that provision does not affect plaintiff's rights to foreclose pursuant to the note and mortgage (see Jeansonne v Generation Mtge. Co., 644 Fed Appx 355, 357 [5th Cir 2016]).

Generally, "instruments [that] were executed at substantially the same time, relate[ ] to the same subject-matter, [and are] contemporaneous writings . . . must be read together as one" (Nau v Vulcan Rail & Constr. Co., 286 NY 188, 197 [1941]; accord Fundamental Long Term Care Holdings, LLC v Cammeby's Funding LLC, 20 NY3d 438, 445 [2013]; see Matter of Hennel, 133 AD3d 1120, 1121 [2015]). This principle readily applies to the note and mortgage here, both of which refer to the other and were executed on the same day (see Wranovics v Finnerty, 277 AD2d 841, 842-843 [2000]; Oneida Natl. Bank v Gulla, 122 AD2d 590, 591 [1986]). The fundamental rule guiding the construction of such instruments is to give effect to the parties' intentions (see Stone Mtn. Holdings, LLC v Spitzer, 119 AD3d 548, 549 [2014]; Wilshire Credit Corp. v Ghostlaw, 300

---

1. This Court recently discussed the general purpose and function of reverse mortgages in Onewest Bank, FSB v Smith (135 AD3d 1063, 1065 [2016]).

AD2d 971, 972 [2002]). To the extent that the terms of the instruments are ambiguous as to the parties' intentions, extrinsic evidence may be considered (*see Stuyvesant Plaza v Emizack, LLC*, 307 AD2d 640, 640 [2003]). Moreover, in the context of a motion for summary judgment, when "the parties' intent depends upon the credibility of extrinsic evidence or a choice among inferences to be drawn from extrinsic evidence, then the issue is one of fact" (*Amusement Bus. Underwriters v American Intl. Group*, 66 NY2d 878, 880 [1985]; *accord Rapp v 136 Oak Dr. Assoc.*, 70 AD3d 914, 916 [2010]; *see Sutton v East Riv. Sav. Bank*, 55 NY2d 550, 554 [1982]; *CV Holdings, LLC v Artisan Advisors, LLC*, 9 AD3d 654, 657 [2004]).

Whether the condition precedent to foreclosure was satisfied here depends on whether defendant is a "[b]orrower." The terms of the note and mortgage clearly prevent plaintiff's foreclosure if defendant is a "[b]orrower," because she continues to make the property her principal residence. The terms of the note and the mortgage are ambiguous as to whether defendant is a "[b]orrower" for the purposes of the condition precedent to foreclosure. According to the note, a "[b]orrower" is defined as each person signing at the end of the note, and defendant did not execute the note. In contrast, the first sentence of the mortgage states: "The [m]ortgagor is [defendant's husband], as to a [l]ife [e]state interest and [defendant], to the [r]emainder . . . ('[b]orrower')." Although unclear in its use of the singular term "[b]orrower" after reference to both defendant's husband and defendant, this language appears to identify defendant as a "[b]orrower." The mortgage introduces further ambiguity when it refers to notice to be afforded to any "borrowers," this time using the plural term when referencing multiple borrowers.

Because the note and mortgage are ambiguous, we consider the extrinsic evidence submitted on the motions. Notably, defendant and her husband signed two notices, approximately three weeks prior to the execution of the note and mortgage, that identified defendant as a non-borrower. However, those notices describe a non-borrower as someone who had no vested ownership interest in the property at issue. Defendant never divested her ownership interest in the property. Instead, she held a vested reversionary interest in the property while her husband held a life estate (*see* EPTL 6-3.2 [a] [1] [A]; 6-4.4; *see generally Matter of Newton*, 54 AD2d 452, 454 [1976]). Thus, inasmuch as those notices contemplate that defendant intended to be a non-borrower under circumstances that never came to pass, they are not dispositive of the parties' intentions.

A "Residential Loan Application for a Reverse Mortgage"

solely identifies defendant's husband as the borrower, and the box for "Co-Borrower's Name" and the line for "Co-Borrower Signature" are both empty. However, the names of defendant's husband and defendant are both listed as "NAME OF BORROWER" on a Department of Housing and Urban Development "Settlement Statement." Moreover, defendant submitted an affidavit explaining that, prior to the execution of the note and mortgage, the agent who had approached her and her husband about a reverse mortgage had explained to them that the mortgage would allow for defendant to remain in the home in the event of the death of defendant's husband and that this was the parties' intention in entering into the note and mortgage.

Initially, and given this conflicting extrinsic evidence, we disagree with the dissent's conclusion that the ambiguity should be resolved as a matter of law by construing it against plaintiff as the drafter of the note and mortgage. Undoubtedly, where there is no extrinsic evidence relevant to an ambiguity in an agreement, "the issue is to be determined as a question of law for the court" (*Hartford Acc. & Indem. Co. v Wesolowski*, 33 NY2d 169, 172 [1973]; *see e.g. State of New York v Home Indem. Co.*, 66 NY2d 669, 672 [1985] [ambiguity resolved against drafter after conclusion that "there are no questions of credibility and no inferences to be drawn from extrinsic evidence"]). In contrast, however, "[i]f there is ambiguity in the terminology used . . . and determination of the intent of the parties depends on the credibility of extrinsic evidence or on a choice among reasonable inferences to be drawn from extrinsic evidence, then such determination is to be made by the jury" (*Hartford Acc. & Indem. Co. v Wesolowski*, 33 NY2d at 172). This precedent establishes that the rule "that any ambiguity in a document is resolved against its drafter . . . is a rule of construction that should be employed only as a last resort" (*Fernandez v Price*, 63 AD3d 672, 676 [2009]; *accord Birdsong Estates Homeowners Assn., Inc. v D.P.S. Southwestern Corp.*, 101 AD3d 1735, 1737 [2012]; *Albany Sav. Bank, FSB v Halpin*, 117 F3d 669, 674 [2d Cir 1997]; *see e.g. CV Holdings, LLC v Artisan Advisors, LLC*, 9 AD3d at 657 ["The extrinsic evidence offered by the parties . . . points in different directions (and, therefore,) the matter is not amenable to summary disposition"]).

Here, the extrinsic evidence is relevant to the parties' intentions as to whether defendant is a "[b]orrower" and is also conflicting on that point. Viewing this evidence in the light most favorable to the nonmoving party in regard to the respec-

tive motions for summary judgment, the determination of the parties' intentions depends on the credibility of extrinsic evidence—including the credibility of defendant's claim that the parties to the note and mortgage intended for her to be able to remain in the home in the event of her husband's death—and the choices between the reasonable inferences that can be drawn from the extrinsic evidence. Accordingly, as material issues of fact exist as to whether the parties intended for plaintiff to be able to foreclose on the property despite defendant continuing to make it her principal residence, summary judgment was not appropriate in favor of either party (*see Aquatic Pool & Spa Servs., Inc. v WN Weaver St., LLC*, 129 AD3d 872, 873 [2015]; *Rapp v 136 Oak Dr. Assoc.*, 70 AD3d at 916; *CV Holdings, LLC v Artisan Advisors, LLC*, 9 AD3d at 657).[2] The parties' remaining contentions are either academic and/or without merit.

Devine and Clark, JJ., concur.

Lynch, J. (dissenting). We respectfully dissent. In our view, the documentation underlying this loan transaction, all of which was prepared by plaintiff, is so internally conflicted that plaintiff should be precluded, as a matter of law, from treating defendant Anne C. Fullam Goeke (hereinafter defendant) as a non-borrower for purposes of triggering a foreclosure action. As the majority points out, the note identifies defendant's husband as the borrower, while there is language in the introductory sentence of the mortgage identifying both defendant and her husband as the borrower. Significantly, that same sentence mischaracterizes defendant's interest in the property as that of a "Remainder" interest. The signature line on the mortgage also identified defendant's interest as "Remainderman." In fact, defendant and her husband acquired deed title from her mother in 2004, taking ownership as tenants by the entirety. By deed dated June 3, 2008, defendant's husband transferred his ownership interest to defendant, "excepting and reserving a life use." Consequently, when the loan transaction was completed on June 12, 2008, defendant actually held full deed title in the property, subject to her husband's "life use." This is not, as characterized in the loan documents by plaintiff, a "remainder" interest. Defendant's ownership interest is significant because she was too young to qualify for a reverse mortgage. And yet,

---

**2.** Defendant also argues that she was entitled to summary judgment dismissing the complaint against her because she was not afforded the notice that a "[b]orrower" was entitled to pursuant to the mortgage. Because that contention depends on resolution of the same issue discussed herein, defendant is not entitled to summary judgment on that ground.

as part of this transaction, defendant was also required to sign in advance an "Ownership Interest Certification" advising defendant that, as a non-eligible owner, she would be required to divest her ownership interest. The document further cautioned that "[i]f you continue to reside in the property *after divestiture* and the borrower predeceases you . . . the reverse mortgage will become due and payable" (emphasis added). At the same time, defendant also signed a "Notice to Non-Borrowing Spouse" advising that, if she was "currently not a vested titleholder," the reverse mortgage would become due and payable if the borrowing spouse predeceased her. The operative point here is that defendant never divested her ownership interest and continues to hold full title in this property.

Having mischaracterized defendant's ownership interest in the transaction documents, identified defendant as a borrower in the mortgage, as well as the HUD-1 settlement statement, and completed the loan transaction while defendant retained ownership, plaintiff's own documentation precludes plaintiff from declaring the mortgage due and payable. As such, we need not look to extrinsic evidence for resolution (*see Greenfield v Philles Records*, 98 NY2d 562, 569-570 [2002]; *Hartford Acc. & Indem. Co. v Wesolowski*, 33 NY2d 169, 171-172 [1973]). We would affirm Supreme Court's order dismissing the complaint against defendant.

Egan Jr., J., concurs. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as granted defendant Anne C. Fullam Goeke's cross motion for summary judgment dismissing the complaint against her; motion denied; and, as so modified, affirmed.