430

[986 NE2d 430, 963 NYS2d 613]

RUBIN SCHRON et al., Plaintiffs, v TROUTMAN SANDERS LLP et
al., Defendants.

MICH II HOLDINGS LLC et al., Plaintiffs, and SVCARE HOLDINGS,
LLC, Appellant, v RUBIN SCHRON et al., Defendants, and
CAMMEBY'S EQUITY HOLDINGS LLC, Respondent.

Argued January 10, 2013; decided February 14, 2013

## POINTS OF COUNSEL

*Zuckerman Spaeder LLP*, New York City (*Paul Shechtman* and *Christina P. Skinner* of counsel), for appellant. Parol evidence is admissible to give content to the words "other good and valuable consideration." (*Ronnen v Ajax Elec. Motor Corp.*,

88 NY2d 582; *Greenfield v Philles Records*, 98 NY2d 562; *Boghosian v SCS Props.*, 299 AD2d 693; *McCreary Co. v People*, 267 NY 37; *Diamond v Scudder*, 45 AD3d 630; *Baker v Higgins*, 21 NY 397; *O'Neil Supply Co. v Petroleum Heat & Power Co.*, 280 NY 50; *Rudman v Cowles Communications*, 30 NY2d 1; *W.W.W. Assoc. v Giancontieri*, 77 NY2d 157; *Reed v Insurance Co.*, 95 US 23.)

*Dechert LLP*, New York City (*Andrew J. Levander* and *Steven A. Engel* of counsel), for respondent. I. The subsequent trial moots this appeal. (*City of New York v Maul*, 14 NY3d 499; *Matter of Hearst Corp. v Clyne*, 50 NY2d 707; *People v Payne*, 88 NY2d 172; *Consolidated Edison Co. of N.Y. v Allstate Ins. Co.*, 98 NY2d 208; *Matter of Anonymous v New York City Health & Hosps. Corp.*, 70 NY2d 972; *People v Hecker*, 15 NY3d 625.) II. Leonard Grunstein, Murray Forman, and SVCare Holdings, LLC may not appeal the nonfinal order. (*Burke v Crosson*, 85 NY2d 10.) III. The First Department correctly held that the option agreement, as a fully integrated and unambiguous contract, may not be modified through extrinsic evidence. (*Matter of Primex Intl. Corp. v Wal-Mart Stores*, 89 NY2d 594; *Jarecki v Shung Moo Louie*, 95 NY2d 665; *Braten v Bankers Trust Co.*, 60 NY2d 155; *Ronnen v Ajax Elec. Motor Corp.*, 88 NY2d 582; *Torres v D'Alesso*, 80 AD3d 46; *Levey v Saphier*, 83 Misc 2d 146; *Boghosian v SCS Props.*, 299 AD2d 693; *Holt v Feigenbaum*, 52 NY2d 291; *Loika v Howard*, 103 AD2d 874; *Weiner v McGraw-Hill, Inc.*, 57 NY2d 458.) IV. Any ambiguities in the SVCare option must be construed against the conflict-ridden attorneys who drafted it. (*Eastside Exhibition Corp. v 210 E. 86th St. Corp.*, 18 NY3d 617; *151 W. Assoc. v Printsiples Fabric Corp.*, 61 NY2d 732; *Shaw v Manufacturers Hanover Trust Co.*, 68 NY2d 172; *Schlanger v Flaton*, 218 AD2d 597; *Shapiro v Glens Falls Ins. Co.*, 39 NY2d 204; *Hemsley v Pannick*, 131 AD2d 940.)

## OPINION OF THE COURT

GRAFFEO, J.

In this case, we conclude that the option contract at issue is valid and enforceable and that the optionor may not introduce parol evidence to import a separate obligation as consideration for the agreement. We therefore affirm the order of the Appellate Division.

Leonard Grunstein and Murray Forman manage and indirectly own plaintiff SVCare Holdings LLC (SVCare), which operates nursing homes through a subsidiary. Rubin Schron, a real

estate investor, controls a number of entities, including defendant Cammeby's Equity Holdings LLC (Cam Equity).[1] For years, Grunstein was Schron's attorney and Forman was his investment banker.

In 2004, Grunstein and Forman sought Schron's participation in the acquisition of Mariner Health Care, Inc., a publicly held company engaged in the nursing home business.[2] Schron agreed to finance the $1.3 billion purchase of Mariner; Grunstein and Forman did not contribute any funds to the buyout. The deal was structured to provide that Schron, through a corporate entity (SMV Property Holdings LLC), would own the underlying real estate and a separate company would manage the facilities. SVCare and its operating subsidiary, SavaSeniorCare LLC (Sava), were formed to carry out the operating and administrative functions. In other words, Schron's company was to hold title to the properties and Grunstein's and Forman's companies (SVCare and Sava) were to manage the nursing homes.

The transaction closed in December 2004 and involved two written agreements relevant to this appeal, both of which were amended in June 2006.[3] First, Cam Equity (the Schron entity) received an option to acquire 99.999% of the membership units of SVCare. The consideration given by Cam Equity to SVCare for the option was described in the contract as "the mutual covenants and agreements hereinafter set forth, and other good and valuable consideration (the receipt and adequacy of which is hereby acknowledged by the Parties)." Under the terms of the agreement, Cam Equity had until June 2011 to exercise the option at the strike price of $100 million. In the event that Cam Equity exercised the option but later sold the company, the contract specified that Cam Equity could retain no more than $400 million of the sale proceeds, with any remaining moneys to be assigned to SVCare. The option agreement also contained a merger clause, which stated:

> "This Agreement contain[s] the entire agreement
> and understanding of the Parties . . . and super-
> sedes and completely replaces all prior and other

---

1. Although there are many parties to this litigation, only two are before us on this appeal—plaintiff SVCare and defendant Cam Equity.

2. Mariner's assets included 170 skilled nursing facilities that it owned and operated.

3. The parties agree that the 2006 documents are the relevant agreements.

representations, warranties, promises, assurances and other agreements and understandings (whether written, oral, express, implied or otherwise) among the Parties with respect to the matters contained in this Agreement."

The second pertinent contract related to the Mariner transaction was a loan agreement under which another of Schron's entities—Cammeby's Funding III LLC (Cam III)—agreed to lend $100 million to SVCare for the purpose of capitalizing its subsidiary, Sava. The loan agreement and the option contract were executed on the same date in December 2004 and amended on the same day in June 2006 as part of a refinancing of the Mariner transaction. At some point after the refinancing, the relationship between the parties deteriorated.

In anticipation that Cam Equity would exercise the option, Grunstein, Forman and their related companies (including SVCare) commenced this action in March 2010 under the caption *Mich II Holdings LLC v Schron*.[4] The only claim relevant to this appeal is the fifteenth cause of action in the complaint, wherein SVCare alleges that the option is unenforceable because the consideration underlying its agreement to offer the option was contingent on Cam III loaning it $100 million, which SVCare claims was never paid.

Despite the pending litigation, Cam Equity gave written notice to SVCare of its intent to exercise the option in June 2010. When SVCare refused to honor the option, Schron and his affiliated entities (including Cam Equity) brought a separate lawsuit—*Schron v Troutman Sanders LLP*—seeking specific performance of the option agreement.

Cam Equity later moved in limine in the *Schron* suit for the exclusion of any parol evidence by SVCare intended to show that the $100 million loan was the "other good and valuable consideration" referenced in the option agreement. In the *Mich II* action, Cam Equity also filed a motion to dismiss SVCare's fifteenth cause of action that asserted similar claims.

Supreme Court consolidated and granted both motions in favor of Cam Equity, concluding that the option and loan were entirely separate agreements; that the option was supported by

---

4. This lawsuit is one of several involving Schron, Grunstein, Forman and their related companies (*see also Fundamental Long Term Care Holdings, LLC v Cammeby's Funding LLC*, 20 NY3d 438 [2013] [decided today]).

consideration, namely, the mutual covenants cited; and that SV-Care could not offer extrinsic evidence regarding the $100 million loan obligation that was not mentioned in the option agreement (32 Misc 3d 231 [2011]). The Appellate Division affirmed (97 AD3d 87 [1st Dept 2012]), and we granted SVCare leave to appeal from so much of the Appellate Division order that affirmed the dismissal of the fifteenth cause of action in the *Mich II* litigation (19 NY3d 811 [2012]).

In the meantime, following a 10-day bench trial in the *Schron* action, Supreme Court issued a decision in September 2012 determining that Cam III had, in fact, fully funded the $100 million loan to SVCare pursuant to the loan agreement (36 Misc 3d 1238[A], 2012 NY Slip Op 51730[U] [2012]). SVCare has taken an appeal to the Appellate Division.[5]

On this appeal, SVCare no longer presses its argument raised below that the option and loan agreement—involving separate subject matters, different parties and without any cross-references—are inextricably intertwined and must be read together. Instead, SVCare maintains that the courts below erred in precluding it from introducing extrinsic evidence regarding the meaning of the phrase "other good and valuable consideration" in the option contract. SVCare asserts that the language is ambiguous and that it should be permitted to adduce parol evidence showing (1) the parties intended the "other consideration" to mean the $100 million loan obligation between Cam III and SVCare and (2) the loan was never funded. Cam Equity responds that the "mutual covenants" set forth in the option agreement suffice for consideration and objects to SVCare's attempt to change the terms of the option by imposing an additional

---

5. [1] As a threshold matter, Cam Equity asks us to dismiss this appeal in the *Mich II* action on the basis that Supreme Court's determination after the trial in *Schron* moots the appeal. Cam Equity submits that, even if we were to decide that SVCare could introduce parol evidence in support of its contention that the $100 million loan was the true consideration for the option, the rights of the parties would not be affected because the loan monies were paid to SVCare. In Cam Equity's view, because Supreme Court has determined that the loan was funded, it follows that the option is necessarily valid and enforceable regardless of whether the loan was the consideration for it. But a case is moot when "the rights of the parties cannot be affected by the determination of th[e] appeal" (*Matter of Hearst Corp. v Clyne*, 50 NY2d 707, 714 [1980]). Although the trial court in *Schron* found that Cam III loaned $100 million to SVCare, that ruling is pending on appeal at the Appellate Division. If that court reverses and concludes that Cam III did not fund the loan, or remits for a new trial, the rights of the parties could possibly be affected by the outcome of this appeal. Consequently, this appeal is not moot.

$100 million condition on the parties' agreement. We conclude that Cam Equity's position better comports with our well-established contract jurisprudence.

Option contracts, like any other agreement, are subject to basic contract interpretation principles. Under New York law, written agreements are construed in accordance with the parties' intent and "[t]he best evidence of what parties to a written agreement intend is what they say in their writing" (*Greenfield v Philles Records*, 98 NY2d 562, 569 [2002] [internal quotation marks and citation omitted]). As such, "a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms" (*id.*).

Parol evidence—evidence outside the four corners of the document—is admissible only if a court finds an ambiguity in the contract. As a general rule, extrinsic evidence is inadmissible to alter or add a provision to a written agreement. This rule gives "stability to commercial transactions by safeguarding against fraudulent claims, perjury, death of witnesses . . . infirmity of memory . . . [and] the fear that the jury will improperly evaluate the extrinsic evidence" (*W.W.W. Assoc. v Giancontieri*, 77 NY2d 157, 162 [1990] [internal quotation marks and citation omitted]). Furthermore, where a contract contains a merger clause, a court is obliged "to require full application of the parol evidence rule in order to bar the introduction of extrinsic evidence to vary or contradict the terms of the writing" (*Matter of Primex Intl. Corp. v Wal-Mart Stores*, 89 NY2d 594, 599 [1997]).

█ Applying these precepts, we agree with the courts below that the option agreement unambiguously provided that the mutually beneficial covenants constituted the consideration and that the importation of another obligation, such as the separate loan obligation, would impermissibly alter the writing in violation of the parol evidence rule.[6] Contrary to SVCare's contention, the commonplace recital of "other good and valuable

---

6. In fact, General Obligations Law § 5-1109 provides that

> "when an offer to enter into a contract is made in a writing signed by the offeror, or by his agent, which states that the offer is irrevocable during a period set forth or until a time fixed, the offer shall not be revocable during such period or until such time because of the absence of consideration for the assurance of irrevocability."

This provision has been applied to option contracts (*see Levey v Saphier*, 83 Misc 2d 146, 150 [Sup Ct, Nassau County 1975] [10-year stock option agreement would be enforceable under the statute even if unsupported by

consideration" does not render the option contract ambiguous or incomplete. We therefore cannot accept SVCare's view that it should be permitted to introduce extrinsic evidence—presumably in the form of oral testimony—to show that the parties intended to include the $100 million loan obligation addressed in a distinct agreement between Cam III and SVCare as consideration for the option.

Moreover, had these sophisticated business entities, represented by counsel,[7] intended to make the $100 million loan payment a condition to the enforceability of the option, they easily could have included a provision to that effect (*see Braten v Bankers Trust Co.*, 60 NY2d 155, 163 [1983] ["Such a fundamental condition would hardly have been omitted"]; *see also Fundamental Long Term Care Holdings, LLC v Cammeby's Funding LLC*, 20 NY3d 438, 445 [2013] [decided today] ["(T)his is not the sort of term these sophisticated, counseled parties would have reasonably left out of the option agreement"]). Notably, the option does not even mention the existence of the loan agreement, let alone condition its validity on the effectuation of the loan. To allow parol evidence at this late stage to inject an entirely different obligation into the parties' option contract would not only modify the requirements spelled out in that agreement, it would also negate the merger clause, which states that the option is a fully integrated document superseding all other understandings, whether written or oral.

In sum, we conclude that the option is a valid, stand-alone contract and that Cam Equity is free to exercise the option by paying the agreed-upon amount of $100 million.

Accordingly, the order of the Appellate Division, insofar as appealed from, should be affirmed, with costs.

Chief Judge LIPPMAN and Judges READ, SMITH and PIGOTT concur; Judge RIVERA taking no part.

Order, insofar as appealed from, affirmed, with costs.

consideration]; *see also Capalongo v Desch*, 81 AD2d 689, 690 [3d Dept 1981], *affd for reasons stated below* 57 NY2d 972 [1982] ["The proper interpretation of this statute is that lack of consideration does not affect revocability, provided the writing contains reference either to a specific period of time, or simply states that it is irrevocable"]).

7. Grunstein and his former law firm drafted the option.