McCarthy, J.
Appeal from a judgment of the Supreme Court (McGuire, J.), entered January 27, 2014 in Sullivan County, upon a decision of the court in favor of plaintiff.
Plaintiff is the owner and operator of Monticello Raceway which, because the activities there include both harness horse racing and video gambling machines (hereinafter VGMs), is referred to as a racino. Defendant owns a nearby resort, on which it planned to open a racino as part of a redevelopment program. Monticello Harness Horsemen’s Association (hereinafter the Association) is the bargaining agent of the owners, trainers and drivers of the harness horses related to such racing.
In contemplation of opening the racino on defendant’s property, plaintiff, defendant and the Association entered into a detailed contract, which, as relevant to this appeal, provided that plaintiff was obligated to pay the Association a certain percentage related to funds that plaintiff generated from VGMs. If certain conditions specified by the contract came to pass, defendant would be obligated to reimburse plaintiff a specified portion of the payment from plaintiff to the Association.
Plaintiff commenced this action alleging that, based on its two annual payments to the Association pursuant to the contract, defendant was obligated to reimburse plaintiff in the amount of $307,747.52. Thereafter, this Court awarded summary judgment to plaintiff on the issue of liability, but remitted for further proceedings related to damages (104 AD3d 1114, 1116-1117 [2013]). After conducting a nonjury trial on damages, Supreme Court found that plaintiff proved its damages to the extent alleged in the complaint and rendered judgment in its favor. Defendant now appeals.
Turning first to the terms of the contract, “written agreements are construed in accordance with the parties’ intent and the best evidence of what parties to a written agreement intend is what they say in their writing” (Schron v Troutman Sanders LLP, 20 NY3d 430, 436 [2013] [internal quotation marks, brackets and citations omitted]; see Monticello Raceway Mgt., Inc. v Concord Assoc. L.P., 104 AD3d 1114, 1116 [2013]). “Parol evidence — evidence outside the four corners of the document — is admissible only if a court finds an ambiguity in the contract” (Schron v Troutman Sanders LLP, 20 NY3d at 436; see Monticello Raceway Mgt., Inc. v Concord Assoc. L.P., 104 AD3d at 1116).
*1185 Defendant’s pertinent obligation to plaintiff is set forth in paragraph 31 (a) of the agreement, which provides that “[defendant] hereby agrees to reimburse [plaintiff] for . . . any and all amounts paid by [plaintiff] to the Association with respect to the Guaranteed VGM Purse Contribution pursuant to Paragraph 2 (b) of Exhibit B to this Agreement in excess of 8.75% of the net win from [VGM] activities at the Monticello Raceway.”
Exhibit B to the contract sets forth in paragraph 1 that plaintiff’s “Annual Purse Payment for each year” to the Association includes “[t]he Horsemen Alternative Gaming Revenue Share,” which is defined in paragraph 2 (b) as 8.75% of net win from VGM activities. Paragraph 2 (b) further provides that “[n]otwithstanding the foregoing, . . . the [Association] shall receive the greater of a) the ‘Horsemen’s Alternative Gaming Revenue Share’ as defined above [as 8.75% of the net win from VGMs] OR b) [$5 million] (the ‘Guaranteed VGM Purse Contribution’).” According to these terms, defendant would be required to reimburse plaintiff for an annual period where 8.75% of the net win from VGMs was less than $5 million and in the amount of the difference between 8.75% of the net win from VGMs and $5 million (that amount hereinafter referred to as the shortfall), which is the shortfall that plaintiff was contractually required to pay to the Association.
The parties agree that any calculation of damages is, in part, based on the definition of the phrase “net win” as used in the contract. The phrase net win is not defined in the contract and does not otherwise have an unambiguous meaning. However, we note that the parties unambiguously evinced their intention as to how such phrases should be construed, stating that “[t]he interpretation ... of this [agreement shall be governed by the . . . Rules and Regulations promulgated by . . . the New York State Lottery” (hereinafter Lottery).[1]
Considering the parties’ agreement that the Lottery’s definition would govern otherwise ambiguous terms of the contract, we reject plaintiff’s contention that net win, as used in the contract, is defined as credits played minus free-play credits[2] minus credits won. On this issue, an August 2009 Lottery bulletin introducing a subsidized free-play credit program at *1186 Monticello Raceway stated that the Lottery authorized Monticello to “deduct promotional free play [credits] from . . . net win[ ].” This bulletin establishes that the Lottery’s definition of net win at that time did not already include a deduction of free-play credits. Further in support of this conclusion, an April 2011 Lottery bulletin — published after the contract had expired by its own terms — announced that “[t]he Lottery has re-defined net win .... The original calculation of net win is [c]redits [p]layed (including [free-play credits]) minus [c]redits [w]on. The revised calculation of net win is [c]redits [p]layed (including [free-play credits]) minus [free-play credits] minus [c]redits [w]on.” Therefore, according to the Lottery’s publications, from the contract’s execution to its expiration, the Lottery defined net win as credits played — including free-play credits — minus credits won, and the Lottery’s revision of that definition only took place after the contract had expired by its own terms. The contract does not evince the intention on the part of the parties for its terms to generally be defined by rules or regulations in effect at the time the contract is controverted. Therefore, given that plaintiff did not overcome the presumption that the contract referred to definitions in effect at the time of its execution, we conclude that the Lottery’s then-existing definition of net win, credits played — including free-play credits — minus credits won, governs that contract phrase (see People ex rel. Platt v Wemple, 117 NY 136, 148-149 [1889]; Travelers Indem. Co. v Orange & Rockland Utils., Inc., 73 AD3d 576, 577 [2010], lv dismissed 15 NY3d 834 [2010]; Huskission v Sentry Ins., 123 AD2d 832, 833 [1986]).
Next, we agree that Supreme Court erred in finding that, upon proof that defendant had lobbied for the revised Lottery definition of net win, either equitable estoppel or waiver barred defendant from relying on the original Lottery definition of net win. To the extent that plaintiff wished to proceed on theories of damages based on defendant’s actions — rather than merely asserting entitlement to damages based on the terms of the contract — it was required to plead such theories (see Del Sonno v American Intl. Life Assur. Co. of N.Y., 148 AD2d 800, 802 [1989], lv denied 74 NY2d 612 [1989]). Plaintiff failed to plead such theories, and Supreme Court erred in adopting the revised definition of net win explicitly based on defendant’s actions rather than relying on the terms of the contract.
In any event, plaintiff’s equitable estoppel and waiver arguments are without merit. As to equitable estoppel, plaintiff provided no proof that defendant made any representations to it that any revised definition of net win governed that phrase *1187 as it was used in the contract (see generally American Bartenders School v 105 Madison Co., 59 NY2d 716, 718 [1983]). As to wavier, reason does not support a conclusion that an entity that lobbies to revise the definition of a phrase for the purposes of future regulatory application “intentional [ly] relinquish [es] a known right” to assert that the phrase has a different meaning in a different context, i.e., in a previously executed contract (Gilbert Frank Corp. v Federal Ins. Co., 70 NY2d 966, 968 [1988]). Accordingly, we conclude that Supreme Court erred in determining damages based on the Lottery’s revised definition of net win.
Next, we reject defendant’s contention that annual calculations under the contract should include consideration of periods of time greater than 12 months, which would have the effect of reducing or eliminating the shortfall by increasing the annual net win. Such a construction ignores the plain meaning of the term annual and is also contrary to statutory principles governing the construction of contracts (see General Construction Law § 58).
Finally, Supreme Court erred in its computation of damages as a result of its erroneous application of the revised definition of net win. As previously determined, the contract definition of net win is credits played — including free-play credits — minus credits won. Given the uncontested proof that the free-play credit program was not in operation during the first annual period — July 1, 2008 through June 30, 2009 — we agree with Supreme Court’s computation that defendant was obligated for the $122,562 shortfall for that year. As to the second annual period, free-play credits were introduced in August 2009. The net win for that year — July 1, 2009 through June 30, 2010— amounts to more than $60 million, 8.75% of which amounts to more than $5 million. Considering this conclusion, there was no shortfall for the second annual period so as to trigger any reimbursement from defendant. Given this determination, we remit for reconsideration of interest, costs and disbursements based on this modified award of damages.
Peters, P.J., Lahtinen and Rose, JJ., concur.
Ordered that the judgment is reversed, on the law, without costs, plaintiff is awarded damages in the amount of $122,562, and matter remitted to the Supreme Court for a determination of interest, costs and disbursements.

. In 2012, the New York State Division of the Lottery was consolidated, along with the New York State Racing and Wagering Board, into a single state agency, the New York State Gaming Commission (see generally L 2012, ch 60).

. As the phrase implies, free-play credits are credits played by gamblers that were given to them for free by the respective casino.