Del Vecchio v Del Vecchio (2023 NY Slip Op 04189)

Del Vecchio v Del Vecchio

2023 NY Slip Op 04189

Decided on August 9, 2023

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on August 9, 2023
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

ANGELA G. IANNACCI, J.P.
CHERYL E. CHAMBERS
DEBORAH A. DOWLING
HELEN VOUTSINAS, JJ.

2020-09196
 (Index No. 12522/09)

[*1]Theresa Del Vecchio, appellant,
v
Joseph Del Vecchio, respondent.

Meth Law Offices, P.C., Chester, NY (Michael D. Meth of counsel), for appellant.
Christine K. Wienberg, P.C., New City, NY (Meryl R. Neuren and Lynn Brustein-Kampel of counsel), for respondent.

DECISION & ORDER
In a matrimonial action in which the parties were divorced by judgment dated February 22, 2013, the plaintiff appeals from an order of the Supreme Court, Orange County (Lori Currier Woods, J.), dated October 13, 2020. The order, insofar as appealed from, denied those branches of the plaintiff's motion which were to hold the defendant in contempt for violating the provisions of the judgment of divorce pertaining to maintenance and the sale of the marital residence, for an award of maintenance arrears in the amount of $52,000, to direct the defendant to immediately turn over the plaintiff's personal belongings from the marital residence, and to direct the defendant to immediately list the marital residence for sale, and granted those branches of the defendant's cross-motion which were to enforce the terms of a modification agreement and for an award of counsel fees pursuant to 22 NYCRR 130-1.1.
ORDERED that the order is modified, on the law, by deleting the provisions thereof denying those branches of the plaintiff's motion which were to hold the defendant in contempt for violating the provision of the judgment of divorce pertaining to maintenance and for an award of maintenance arrears in the amount of $52,000, and the provisions thereof granting those branches of the defendant's cross-motion which were to enforce the terms of the modification agreement and for an award of counsel fees pursuant to 22 NYCRR 130-1.1; as so modified, the order is affirmed insofar as appealed from, without costs or disbursements, and the matter is remitted to the Supreme Court, Orange County, for a hearing on those branches of the plaintiff's motion which were to hold the defendant in contempt for violating the provision of the judgment of divorce pertaining to maintenance and for an award of maintenance arrears in the amount of $52,000, and those branches of the defendant's cross-motion which were to enforce the modification agreement and for an award [*2]of counsel fees pursuant to 22 NYCRR 130-1.1, and a new determination thereafter of those branches of the motion and the cross-motion.
The parties were married in 1998 and have one child together, who is now emancipated. The parties were divorced pursuant to a judgment dated February 22, 2013. The judgment of divorce incorporated, but did not merge, a separation agreement dated November 28, 2012. The judgment of divorce provided, inter alia, that the defendant shall pay to the plaintiff $400 per month in maintenance while the plaintiff was residing in the marital residence or until such time as the marital residence was sold, and that following the sale of the marital residence or the plaintiff's departure therefrom, the defendant shall pay the plaintiff $900 per month. The judgment of divorce directed that payments were to begin on December 1, 2012, for a term of 60 months. The separation agreement provided, inter alia, that both parties were permitted to continue to reside in the marital residence, that the parties would list the marital residence for sale on March 1, 2013, and would share equally in the sales proceeds after payment of costs. With respect to maintenance, the separation agreement provided that the maintenance obligation would continue until one of several events transpired, including, as relevant here, the plaintiff's cohabitation with a man. The separation agreement further provided, among other things, that it could not be orally modified, and that "[o]nly a statement in writing, signed and acknowledged with the same formality as this Agreement," would modify the agreement.
It is undisputed that the plaintiff moved out of the marital residence in March 2013, that the defendant has not paid the plaintiff any maintenance, and that the marital residence has not been sold.
In August 2019, the plaintiff moved to hold the defendant in contempt due to his failure to pay maintenance and failure to cooperate in the sale of the marital residence, for an award of $52,000 in maintenance arrears from December 2012 to November 2017, to direct the defendant to immediately list the marital residence for sale, to direct the defendant to immediately return to the plaintiff certain items of personal property that remained in the marital residence, and for an award of counsel fees.
In January 2020, the defendant cross-moved, inter alia, to enforce the terms of a written modification agreement dated February 27, 2013. The purported modification agreement proffered by the defendant read as follows:
This letter is an official document to guarantee [the plaintiff] and [the defendant] equal sharing of the profit of the home upon its final sale. Furthermore, it also guarantees that upon [the plaintiff's] residing in the residence of a significant other, [the defendant] is no longer obligated to pay [the plaintiff] the court-ordered $900 per month for maintenance.
In an affidavit in support of his cross-motion, the defendant attested that the modification agreement was intended to memorialize the parties' oral agreement to postpone the sale of the former marital residence until the parties' child completed high school in June 2015, and to terminate the defendant's maintenance obligation, in exchange for the plaintiff receiving a greater equitable distribution award from the parties' equal division of the proceeds from the sale of the marital residence due to the payments that the defendant had continued to make on the property's mortgage. The defendant's cross-motion also sought an award of counsel fees pursuant to 22 NYCRR 130-1.1, [*3]on the ground that the plaintiff's motion was frivolous.
The plaintiff submitted a reply affidavit in which she conceded that she had orally agreed that the defendant could "postpone the start" of his maintenance payments until after their child graduated high school, but after the child's graduation occurred in June 2015, the defendant never remitted any payments. The plaintiff denied that she had agreed to any other modifications, denied that she had executed the alleged written modification agreement, and offered to produce witnesses to testify that her purported notarized signature on the written modification agreement was forged.
The Supreme Court denied the plaintiff's motion in its entirety, and granted the defendant's cross-motion to the extent of, inter alia, finding that the modification agreement was valid and enforceable, and awarding the defendant $2,500 in counsel fees upon the court's finding that the plaintiff's motion was frivolous. The plaintiff appeals.
"A stipulation of settlement which is incorporated but not merged into a judgment of divorce is a contract subject to principles of contract construction and interpretation" (Zuchowski v Zuchowski, 85 AD3d 777, 778 [internal quotation marks omitted]; see Hannigan v Hannigan, 50 AD3d 957, 957; Simmons v Simmons, 305 AD2d 661). "The fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties' intent," and "'[t]he best evidence of what parties to a written agreement intend is what they say in their writing'" (Greenfield v Philles Records, 98 NY2d 562, 569, quoting Slamow v Del Col, 79 NY2d 1016, 1018; see Yeled V'Yalda Early Childhood Ctr., Inc. v Attentive Behavior Mental Health Counseling, P.C., 208 AD3d 1209, 1210). "Parol evidence—evidence outside the four corners of the document—is admissible only if a court finds an ambiguity in the contract" (Schron v Troutman Sanders LLP, 20 NY3d 430, 436; see Yeled V'Yalda Early Childhood Ctr., Inc. v Attentive Behavior Mental Health Counseling, P.C., 208 AD3d at 1210).
The Supreme Court erred in granting, without a hearing, the branch of the defendant's cross-motion which was to enforce the terms of the modification agreement and in denying, without a hearing, the branch of the plaintiff's motion which was for an award of maintenance arrears. While "[s]omething more than a bald assertion of forgery is required to create an issue of fact contesting the authenticity of a signature" (Banco Popular N. Am. v Victory Taxi Mgt., 1 NY3d 381, 384), here, irregularities on the face of the modification agreement itself called into doubt its authenticity. The parties' signatures, which were sworn before a notary but not acknowledged, reflect that the plaintiff allegedly signed the modification agreement on March 29, 2011, two years before the date of the agreement, and the defendant allegedly signed the agreement on February 4, 2014, three years after the plaintiff and one year after the date of the agreement. Moreover, as the plaintiff correctly contends, the modification agreement was not acknowledged, as required by the plain terms of the parties' separation agreement (see Wetherby v Wetherby, 50 AD3d 1226, 1227; Keck v Keck, 282 AD2d 436, 437; but cf. Matter of O'Connor v Curcio, 281 AD2d 100, 103 ["An agreement which does not satisfy the prerequisites of a legally binding modification agreement may nonetheless constitute a valid waiver"]). Under such circumstances, it was error to conclude that no triable issue of fact existed as to the validity and enforceability of the written modification agreement (see generally TD Bank, N.A. v Piccolo Mondo 21st Century, Inc., 98 AD3d 499, 500).
Moreover, even assuming that the modification agreement is enforceable, the plain language of the agreement does not entirely eliminate the defendant's obligation to pay maintenance, [*4]as it provides only that "upon [the plaintiff] residing in the residence of a significant other," the defendant "is no longer obligated" to pay "$900 per month for maintenance." The record reflects a factual dispute between the parties as to whether the plaintiff resided with a significant other upon her departure from the marital residence in March 2013. The record also reflects a factual dispute as to whether the defendant owed the plaintiff maintenance for the period prior to her departure from the marital residence, or whether, as the defendant contends, any maintenance he owed for that period was more than offset by the plaintiff's nonpayment of certain household expenses that were her responsibility under the separation agreement. Contrary to the defendant's contention, the language of the modification agreement does not reflect that the plaintiff agreed to waive all maintenance payments in exchange for an increased share in the equity of the marital residence.
Contrary to the defendant's contention, the record was also insufficient to determine, as a matter of law, that the plaintiff waived her right to receive maintenance payments through her conduct (see Cavayero v Cavayero, 184 AD3d 801, 802). Although a party may waive her or his rights under an agreement, a waiver "is not created by negligence, oversight, or thoughtlessness, and cannot be inferred from mere silence" (Peck v Peck, 232 AD2d 540, 540; see Kelly v Kelly, 165 AD3d 771, 771). "Waiver requires proof of a voluntary and intentional relinquishment of a known and otherwise enforceable right" (Peck v Peck, 232 AD2d at 540; see Haberman v Haberman, 216 AD2d 525, 527). "Waiver . . . should not be lightly presumed and must be based on a clear manifestation of intent to relinquish a contractual protection" (Stassa v Stassa, 123 AD3d 804, 805 [internal quotation marks omitted]). Here, the plaintiff's delay in bringing a motion to enforce her right to maintenance was insufficient to support a finding that the plaintiff voluntarily relinquished her right to maintenance (see Matter of Dox v Tynon, 90 NY2d 166; Cavayero v Cavayero, 184 AD3d at 802; cf. Matter of Makris v Makris, 179 AD3d 694).
Also contrary to the defendant's contention, the record does not support a finding that the plaintiff ratified a change to the parties' settlement agreement by accepting consideration in exchange for termination of the defendant's maintenance obligation. Where, as here, a written agreement contains a clause prohibiting oral modification, an alleged oral modification will be deemed enforceable "only if there is part performance that is unequivocally referable to the oral modification" (Parker v Navarra, 102 AD3d 935, 936; see Kirk v Kirk, 207 AD3d 708), which requires conduct "inconsistent with any other explanation" (Vogel v Vogel, 128 AD3d 681, 684 [internal quotation marks omitted]). Here, the defendant failed to proffer evidence to demonstrate, as a matter of law, that this standard has been met. The record does not contain evidence to support the defendant's contention that the plaintiff already received an increased equitable distribution award in exchange for a waiver of all maintenance. With respect to the plaintiff's admission that she orally agreed to the defendant postponing the start of maintenance payments until their child graduated high school, she further alleges that, after the child graduated, the defendant never commenced making any payments. In any event, the oral agreement described by the plaintiff did not constitute a complete waiver of maintenance.
As the defendant failed to establish as a matter of law that the plaintiff waived maintenance through her conduct, the Supreme Court should not have denied the plaintiff's request for maintenance arrears without a hearing (see Cavayero v Cavayero, 184 AD3d at 802).
In light of the foregoing determinations, the Supreme Court erred in granting, without a hearing, the branch of the defendant's cross-motion which was for an award of counsel fees pursuant to 22 NYCRR 130-1.1. Conduct during litigation is frivolous and subject to sanction or [*5]an award of costs when it is completely without merit in law or fact and cannot be supported by a reasonable argument for the extension, modification, or reversal of existing law; it is undertaken primarily to delay or prolong the resolution of the litigation, or to harass or maliciously injure another; or it asserts material factual statements that are false (see id.; Pathak v Shukla, 164 AD3d 687, 689; Greene v Doral Conference Ctr. Assoc., 18 AD3d 429, 431). Here, in light of the numerous unresolved factual disputes set forth above, the present record was insufficient to determine whether the plaintiff's motion was frivolous within the meaning of 22 NYCRR 130-1.1 (see 22 NYCRR 130-1.1[c][1]; see also Rhodes v Rhodes, 169 AD3d 841, 844-845).
The Supreme Court properly denied, without a hearing, that branch of the plaintiff's motion which was to hold the defendant in contempt for his failure to cooperate in the sale of the marital residence. "To prevail on a motion to punish for civil contempt, the movant must establish by clear and convincing evidence: '(1) that a lawful order of the court, clearly expressing an unequivocal mandate, was in effect, (2) that the party against whom contempt is sought disobeyed the order, (3) that the party who disobeyed the order had knowledge of its terms, and (4) that the movant was prejudiced by the offending conduct'" (Heffer v Krebs, 196 AD3d 684, 685, quoting Spencer v Spencer, 159 AD3d 174, 177). A hearing is not mandated "in every instance where contempt is sought; it need only be conducted if a factual dispute exists which cannot be resolved on the papers alone" (Bowie v Bowie, 182 AD2d 1049, 1050; see Jaffe v Jaffe, 44 AD3d 825, 826; Matter of Ginther v Ginther, 13 AD3d 1128). Here, in an affidavit submitted in opposition to the plaintiff's motion, the defendant attested to efforts that he made to resolve the parties' disposition of the marital residence by purchasing the plaintiff's equitable share of the property, and he included correspondence from the plaintiff's former counsel in 2017 which reflected the plaintiff's expression of interest in a "potential buyout" and her consent to an appraisal of the property in furtherance of such a resolution. In an affidavit submitted in reply, the plaintiff did not deny that such correspondence transpired, and stated only that such "communications between counsel ceased" when the plaintiff's then-counsel became unavailable to continue her representation. In her reply, the plaintiff also expressed her willingness to remit payment for her share of the appraisal, and requested that a new appraisal be conducted. As the record does not reflect a bona fide issue of fact as to whether the defendant violated the provision of the parties' settlement agreement which directed "the parties" to list the marital residence for sale, no hearing was necessary as to this issue.
However, the Supreme Court erred in denying, without a hearing, the branch of the plaintiff's motion which was to hold the defendant in contempt for his nonpayment of maintenance, as the record reflects unresolved issues of fact as to whether the defendant failed to comply with his maintenance obligations pursuant to the parties' stipulation of settlement, as discussed above (cf. Jafri v Jafri, 292 AD2d 425, 426).
The Supreme Court properly denied that branch of the plaintiff's motion which was to direct the defendant to "immediately list the marital home . . . for sale." The plaintiff did not oppose the branch of the defendant's cross-motion which was to fix the value of the plaintiff's equitable share of the marital residence, except to the extent that she requested a new appraisal. The plaintiff does not appeal from so much of the order as fixed the value of her equitable share of the marital residence at $72,588.83, but contends on appeal that the court made no provision for "when or how the residence would be sold," so that she could receive her equitable share. She now asks this Court, inter alia, to issue an order directing that her equitable share of the value of the marital residence be paid to her immediately, relief that she did not seek in the Supreme Court. Insofar as the settlement agreement provides that both parties, and not merely the defendant, are jointly [*6]responsible for listing the house for sale, and insofar as the plaintiff now appears to be a cooperating participant in a procedure whereby the defendant will retain the property and purchase the plaintiff's equitable share, we decline to disturb the Supreme Court's determination to deny the branch of the plaintiff's motion which was to direct the defendant to immediately list the marital residence for sale.
The Supreme Court properly denied that branch of the plaintiff's motion which was to direct the defendant to immediately turn over the plaintiff's personal belongings from the marital residence, which the plaintiff claims remained in the marital residence when she vacated the residence in March 2013. The parties' settlement agreement provides that the parties are to "divide between them all articles of personal property at the time of the sale of the marital residence," and includes no further provision related to the various pieces of personal property identified in the plaintiff's motion.
IANNACCI, J.P., CHAMBERS, DOWLING and VOUTSINAS, JJ., concur.
ENTER:
Darrell M. Joseph
Acting Clerk of the Court