22-2810; 22-2831
*Williams v. Buffalo Public Schools; Morrison v. Buffalo Board of Education*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 4th day of April, two thousand twenty-four.

PRESENT:
> DENNIS JACOBS,
> RICHARD J. SULLIVAN,
> EUNICE C. LEE,
> > *Circuit Judges.*

––––––––––––––––––––––––––––––––––––––––––

YAMILETTE WILLIAMS,

> *Plaintiff-Appellant*,

> v.                                                                 No. 22-2810

BUFFALO PUBLIC SCHOOLS, BOARD OF EDUCATION FOR THE CITY SCHOOL DISTRICT OF THE CITY OF BUFFALO, CITY SCHOOL DISTRICT OF THE CITY OF BUFFALO, PAMELA BROWN, DARREN BROWN, SHARON BELTON-COTTMAN, MARY GUINN, FLORENCE JOHNSON, MARY RUTH KAPSIAK, JOHN LICATA, JASON M. MCCARTHY, BARBARA SEALS NEVERGOLD, CARL PALADINO, JAMES M. SAMPSON, THERESA HARRIS-TIGG,

> *Defendants-Appellees.*\*

––––––––––––––––––––––––––––––––––––––––––

---

\* The Clerk of Court is respectfully directed to amend the official case caption as set forth above.

_____

FAITH ANDREA MORRISON,

*Plaintiff-Appellant*,

v.                                                    No. 22-2831

BOARD OF EDUCATION FOR THE CITY SCHOOL
DISTRICT OF THE CITY OF BUFFALO, BUFFALO
PUBLIC SCHOOLS, CITY SCHOOL DISTRICT OF
THE CITY OF BUFFALO, PAMELA BROWN,
MARY GUINN, FLORENCE JOHNSON,
MARY RUTH KAPSIAK, DARREN BROWN,
JOHN LICATA, JASON M. MCCARTHY,
BARBARA SEALS NEVERGOLD, CARL
PALADINO, JAMES M. SAMPSON, THERESA
HARRIS-TIGG,

*Defendants-Appellees*.[*]
_____

**For Plaintiffs-Appellants:**          RAYMOND P. KOT II, Law Office of
                                        Raymond P. Kot II, Williamsville,
                                        NY.

**For Defendants-Appellees:**          ROBERT E. QUINN, Buffalo Public
                                       Schools, Buffalo, NY.

Appeals from judgments of the United States District Court for the Western

District of New York (Frank P. Geraci, Jr., *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED,**

**ADJUDGED, AND DECREED** that the September 30, 2022 judgments of the

district court are **VACATED** and **REMANDED**.

---

[*] The Clerk of Court is respectfully directed to amend the official case caption as set forth above.

Yamilette Williams and Faith Andrea Morrison (together, "Plaintiffs") are former high-ranking employees in the Buffalo public school system who appeal from the district court's grant of summary judgment in favor of the Buffalo Board of Education, Buffalo Public Schools, the City School District of the City of Buffalo, and several school board members and district officials (collectively, "Defendants") on Plaintiffs' breach of contract claims.[1]  On appeal, Plaintiffs argue that the district court erred in concluding that they did not possess the contractually requisite certifications for their positions at the time of their terminations, and that the district court erred in concluding that Defendants had not waived their right to invoke the relevant provision ("paragraph 13") in Plaintiffs' employment contracts.  We review a district court's grant of summary judgment *de novo*, *see Kee v. City of New York*, 12 F.4th 150, 157–58 (2d Cir. 2021), and will affirm when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a).  We assume the parties' familiarity with the facts, procedural history, and issues on appeal.

---

[1] Although Plaintiffs have pursued separate appeals in this case, we address both matters in a single order because the parties are represented by the same counsel, the issues presented are substantially the same, and the same district court order is on appeal in both cases.

On September 28, 2017, the district court dismissed Plaintiffs' operative complaints with prejudice. On appeal, we affirmed the district court's judgments of dismissal as to all but Plaintiffs' breach of contract claims, *see Williams v. Buffalo Pub. Schs.*, 758 F. App'x 59, 65 (2d Cir. 2018); *Morrison v. Buffalo Bd. of Educ.*, 741 F. App'x 827, 832 (2d Cir. 2018), which we remanded for further proceedings as to whether Plaintiffs' internship certificates satisfied the certification requirement in the parties' employment contracts and whether Defendants had waived their right to invoke this contractual requirement. On remand, the district court concluded that the answer to both of these questions was "no," and this appeal followed.

To demonstrate a breach of contract under New York law, a plaintiff must establish that (1) "a contract exists," (2) "plaintiff performed in accordance with the contract," (3) "defendant breached its contractual obligations," and (4) "defendant's breach resulted in damages." *34-06 73, LLC v. Seneca Ins. Co.*, 39 N.Y.3d 44, 52 (2022). In determining a party's obligations under the contract, it is well-settled that a court's role "is to ascertain the intention of the parties at the time they entered into the contract." *Evans v. Famous Music Corp.*, 1 N.Y.3d 452, 458 (2004). "If that intent is discernible from the plain meaning of the language of the contract, there is no need to look further." *Id.* Courts will look to extrinsic

4

evidence only "if a court finds an ambiguity in the contract." *Schron v. Troutman Sanders LLP*, 20 N.Y.3d 430, 436 (2013).

Paragraph 13 of Plaintiffs' employment agreements provided that if Plaintiff "fail[ed] to maintain any certifications or qualifications required of h[er] position (i.e., qualifications required by the Department of Civil Service or State Education Department), then this agreement shall immediately become null and void." Williams App'x at 93; Morrison App'x at 91. This paragraph also required Plaintiffs to "pass[] any examination the Department of Civil Service may deem appropriate for the position." Williams App'x at 93; Morrison App'x at 91. The agreements further provided that the "[f]ailure of either party . . . to insist upon strict compliance with any provision of the [a]greement shall not be construed to be a waiver thereof." Williams App'x at 94; Morrison App'x at 91.

In granting summary judgment for Defendants, the district court concluded that the relevant employment agreements "required Plaintiffs to obtain certifications that would allow them to perform the duties of their positions, as those positions were defined and bargained for under the agreements," and that the "internship certificates" that Plaintiffs held did not so qualify. Sp. App'x at 8–9. In reaching this conclusion, the district court did not question that the

5

internship certificates were "valid credential[s]" authorizing Williams and Morrison "to act within the area of service for which the certificate is valid." *Id.* at 8 n.8 (internal quotation marks omitted). Instead, the district court determined that the "internship certificates did not qualify Plaintiffs to perform their positions under their contracts" because the certificates required Defendants "to undertake additional supervisory responsibilities related to Plaintiffs' educational program and outcomes . . . that were not contemplated under the employment agreements." *Id.* at 9.

We cannot agree with the district court that, on this record and as a matter of law, the internship certificates did not qualify Plaintiffs to perform the duties contemplated by their employment agreements. As an initial matter, a reasonable factfinder could conclude that the employment agreements indicated that the "certifications or qualifications" required under the agreement were those "qualifications [that are] required by the Department of Civil Service or State Education Department." Williams App'x at 93; Morrison App'x at 91. Here, the State Education Department submitted an *amicus* brief explicitly setting forth its view that Plaintiffs' internship certificates "w[ere] an acceptable certification allowing them to serve in their roles as school district leaders." Williams App'x

at 1093; Morrison App'x at 1095. In light of the State Education Department's stated position, we cannot say that no reasonable juror could find that Plaintiffs' internship certificates – which in the Department's view qualify as "certifications . . . required by the . . . State Education Department," Williams App'x at 93; Morrison App'x at 91 – allowed Plaintiffs to work as contemplated at the time of contracting. *See Appeal of Coughlin*, Decision No. 14,751, 2002 WL 34702296, at *2 (June 2002 decision from the State Education Commissioner providing that "an internship certificate is recognized by the State Education Department as a valid credential authorizing the holder to act within the area of service for which the certificate is valid").[2]

---

[2] We refer to the State Education Department's *amicus* brief and *Appeal of Coughlin* as extrinsic evidence that is probative of the parties' understanding of the phrase "any certifications or qualifications required of h[er] position" at the time the contract was executed. Williams App'x at 93; Morrison App'x at 91. Given that this is a breach of contract case (rather than an action that calls upon us to construe or interpret the relevant regulations), we agree with Defendants that there is no reason for us to defer to the State Education Department's interpretation of the regulations in this case and do not purport to do so here. For this same reason, we decline Defendants' invitation to examine post-*Coughlin* revisions to the relevant regulations in an effort to surmise whether the Commissioner would view an internship certificate as an acceptable alternative to the traditional school district leader certificate. Put simply, this is not a case in which "the extrinsic evidence is so one-sided that no reasonable factfinder could decide contrary to one party's interpretation" of the contract. *SCS Commc'ns, Inc. v. Herrick Co.*, 360 F.3d 329, 342 (2d Cir. 2004) (internal quotation marks omitted); *see also Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 257 (2d Cir. 2002) ("When the language of a contract is susceptible to different interpretations and where there is relevant extrinsic evidence of the parties' actual intent, then the contract's meaning becomes an issue of fact precluding summary judgment." (internal quotation marks omitted)).

Defendants' arguments that the internship certificates indisputably do not enable Plaintiffs to perform their contemplated duties are unavailing on a motion for summary judgment and are better made to the factfinder at trial. While Defendants suggest that an internship certificate would not have allowed Plaintiffs to evaluate the personnel they supervised, the only evidence they cite in support of this proposition is deposition testimony from the district's talent management director indicating his understanding – based on various, unspecified conversations – that individuals with internship certificates could not conduct evaluations. But the State Education Department explicitly recognized that school leaders have "[r]esponsibilty for the . . . performance evaluation of certified personnel" and *still* concluded that "[P]laintiffs' respective . . . [i]nternship [c]ertificates were an acceptable certificate authorizing them to perform the duties of their positions." Williams App'x at 1103–04; Morrison App'x at 1105–06. Given this competing evidence, we conclude that there is a genuine factual dispute as to whether Plaintiffs were foreclosed from performing the duty of evaluating school personnel.

Nor is there any evidence that the internship certificate would have precluded Plaintiffs from acting as the superintendent's designee, such that they

8

could not have performed this aspect of their duties. Although the regulation plainly requires that candidates with internship certificates "successfully complete leadership experiences that shall . . . be supervised by certified school district leaders," N.Y. Comp. Codes R. & Regs. tit. 8, § 52.21(c)(3)(v)(a)(3), Defendants have pointed to nothing in the record or the regulations indicating that allowing candidates to stand in for the superintendent as necessary would somehow constitute "[in]appropriate supervision" for purposes of the internship certificate, *id.* § 80-5.9(b). The same is true of Defendants' contention that the internship certificates would not have empowered Plaintiffs to make high-level, discretionary decisions. And, to the extent that the district court concluded that the employment agreements' provision that "any 'reporting requirements' could be changed by the [s]uperintendent 'in his/her *sole discretion*'" was inconsistent "with the kind of mandatory supervision that the District would need to undertake in connection with the internship certificate," Sp. App'x at 13, the district court failed to explain why any such tension would not also exist with regard to the mandatory supervision requirements of the transitional D certificate, which – as discussed in greater detail below – Defendants do not dispute would have been contractually sufficient. Defendants have therefore failed to demonstrate that, as a matter of

9

law, the internship certificates did not allow Plaintiffs to perform the contemplated duties of their employment.

Defendants have likewise failed to demonstrate that Plaintiffs' continued employment with the internship certificates would "foist additional, mandatory supervisory responsibilities on the District and/or the [s]uperintendent that the parties had not bargained for under the employment agreements." Defs. Brs. at 36. Notably, the record is devoid of any evidence that the internship certificates would have required supervision that was more onerous or different in nature than what the parties contemplated at the time of contracting. Defendants do not dispute that Plaintiffs could have fulfilled their obligations under the contract by possessing a transitional D certificate, which also carries mandatory supervisory responsibilities. Notably, the district court *explicitly credited and relied on* the declaration of the deputy counsel for the Education Department, which stated that "to the extent that [Defendants] take[] the position that a [t]ransitional D certification . . . would have been acceptable for [P]laintiffs' employment[,] . . . mentoring and supervision is in any event likewise required under that pathway." Williams App'x at 1114; Morrison App'x at 1116; *see also* N.Y. Comp. Codes R. & Regs. tit. 8, § 80-5.15(a)(2)(iii) (providing that, to qualify

10

for the transitional D certificate, the candidate must submit "satisfactory evidence of a *written commitment* from a school district or BOCES [board of cooperative educational services] for *district mentored and college supervised employment* as a school district leader" (emphasis added)); *id.* § 52.21(c)(4)(vi) (discussing "[m]entored and supervised experience" required for transitional D certificate). Indeed, there is no evidence as to the level of supervision that would have been required under a transitional D certificate, much less how the level or nature of that supervision would have differed from that required under an internship certificate. In light of these gaps, we have no reason to believe that the supervisory responsibilities imposed in connection with an internship certificate "are inconsistent with the division of responsibilities to which the parties agreed under Plaintiffs' employment agreements." Sp. App'x at 12. We therefore conclude that genuine issues of material fact preclude the entry of summary judgment in favor of Defendants.[3]

As explained in our prior summary orders in this case, there are sufficient facts in the record to support a plausible inference that "Defendants waived their

---

[3] We decline to address the issue of whether Plaintiffs have demonstrated a basis for liability against the individual defendants, since the district court did not weigh in on this issue below. *See Sulzer Mixpac AG v. A&N Trading Co.*, 988 F.3d 174, 184 (2d Cir. 2021) ("We generally refrain from considering issues not decided by the district court.").

11

right to enforce the . . . New York certification requirement – at least as concerns [Plaintiffs'] initial period of non-compliance." *Williams*, 758 F. App'x at 64; *see also Morrison*, 741 F. App'x at 830. The district court's order seemed to recognize as much insofar as it stated that "Plaintiffs may reasonably argue that the District could not terminate their employment solely due to their initial failure to maintain the proper certificates at the time of appointment." Sp. App'x at 15 (internal quotation marks omitted). We also agree with the district court's conclusion that Defendants' "choice to take no action at the time of Plaintiffs' appointment did not necessarily bar [them] from terminating Plaintiffs' employment in April 2014." *Id.* at 16; *see also Fundamental Portfolio Advisors, Inc. v. Tocqueville Asset Mgmt., L.P.*, 7 N.Y.3d 96, 105 (2006) (explaining that proponent of waiver bears the "burden of proving as a matter of law" that any "initial waiver . . . continued" as the nature of the parties' relationship evolved). However, because questions remain as to the scope of that initial waiver, we conclude that a genuine dispute of material fact exists concerning whether Defendants were entitled to invoke paragraph 13 at the time of Plaintiffs' termination, which must be decided by the factfinder at trial. *See Morrison*, 741 F. App'x at 830 ("[A] party's intent to relinquish a contractual right generally presents a question of fact."); *Williams*, 758 F. App'x at 63

12

("[W]hether a party intends to waive a contractual right is generally a question of fact.").

Accordingly, we **VACATE** the judgments of the district court and **REMAND** the cases for further proceedings consistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court
