## Charles Condominiums, LLC v Victor RPM First, LLC

2024 NY Slip Op 31174(U)

April 5, 2024

Supreme Court, New York County

Docket Number: Index No. 657040/2019

Judge: Margaret A. Chan

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:  COMMERCIAL DIVISION PART 49M

-------------------------------------------------------------------------------X

THE CHARLES CONDOMINIUMS, LLC,

                            Plaintiff,

                       - v -

VICTOR RPM FIRST, LLC, VRE DEVELOPMENTS INC.
D/B/A VICTOR GROUP, MOSHE SHUSTER, RAN
KOROLIK, 1355 FIRST AVENUE FEE HOLDER LLC, 1355
FIRST AVENUE LAND OWNER LLC, RAMIN KAMFAR,
PHILIP MENDLOW

                        Defendant.

-------------------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 657040/2019 |
| **MOTION DATE** | 07/14/2023 |
| **MOTION SEQ. NO.** | MS 005 |

**DECISION + ORDER ON MOTION**

HON. MARGARET A. CHAN:

The following e-filed documents, listed by NYSCEF document number (Motion 005) 115, 116, 117, 118, 119, 120, 121, 122, 123, 124, 125, 126, 127, 128, 129, 130, 131, 132, 133, 134, 135, 136, 137, 138, 139, 140, 141, 142, 143, 144, 145, 146, 147, 148, 149, 150, 151, 152, 153, 154, 155, 156, 157, 158, 159, 160, 161, 162, 163, 164, 165, 166, 167, 168, 169, 170, 171, 172

were read on this motion to/for         PARTIAL SUMMARY JUDGMENT       .

      This action arises out of a pipe burst incident in a luxury residential condominium owned by the plaintiff The Charles Condominiums, LLC ("Charles" or the plaintiff). In its complaint, Charles alleges that it sustained millions of dollars in damages as the result of the incident. Defendant Victor RPM First, LLC ("Victor" or the defendant) is the Development Manager for the development and construction of the condominium under the parties' Amended and Restated Development Management Agreement. Plaintiff now moves for partial summary judgment pursuant to CPLR 3212 solely on the issue of Victor's liability for breach of contract. Victor opposes the motion. For the reasons below, the motion is denied.

### Background

      The following facts are taken from the parties' Rule 19-a statements, affidavits, and exhibits. They are not in dispute unless otherwise noted.

*The Development Agreement*

      On January 17, 2013, Charles and Victor entered into the Amended and Restated Development Management Agreement (Development Agreement or Agreement) regarding the construction of a luxury high-rise condominium in Manhattan's Upper East Side neighborhood (the Condominium or the Project)

**657040/2019  CHARLES CONDOMINIUMS, LLC vs. VICTOR RPM FIRST, LLC**
**Motion No.  005**

**Page 1 of 6**

1 of 6

[* 1]

(NYSCEF # 118, Development Agreement). The Development Agreement defines Victor as the "Development Manager" and Charles as the "Owner" (*id.* at Preamble).

Under the Agreement, the affiliates of Charles provided substantially all the equity capital for the Project, while Victor was to "undertake and complete all tasks necessary to construct a luxury residential condominium" (*id.* at Third WHEREAS Clause). Specifically, section 2 states:

> Development Manager shall at Owner's expense perform, or cause to be performed, all of the work necessary to construct and build-out the Project, and supply all of the materials and finishings in connection therewith in accordance with the plans and specifications ...

(*id.* § 2).

Section 5 discusses the performance of the construction. As relevant here, section 5(a) states:

> Development Manager shall promptly cause the commencement and diligent continuance of the construction of the Project Work by Contractor under the Construction Contract until completion . . .

(*id.* § 5(a)). Section 5(b) further states that "Development Manager shall be solely responsible for the supervision of all of the Project Work" and that "[a]ny appropriate corrections required by Owner shall be promptly performed" (*id.* § 5(b)). Finally, section 5(d) states that "[t]he Project Work shall be deemed 'Complete' when all of the conditions specified in the definition of 'Complete the Project' in the Construction Loan Documents have been met" (*id.* § 5(d)).

### The 2016 Burst Pipe Incident

In July 2016, a pipe on the 16th floor of the Condominium burst, causing a leak of water and glycol throughout some units ("the 2016 Burst Pipe Incident" or "the Incident") (NYSCEF # 116, Michael Konig Aff ¶ 18; NYSCEF # 123, Exh F of Konig Aff at 46). RAND Engineering & Architecture DPC (RAND), Charles' engineer, and Cumming Corporation, Charles' project manager, issued reports indicating that the Condominium suffered from construction defects (NYSCEF # 116 ¶¶ 20-29; *see* NYSCEF #s 120-124, Exhs D, E, F, G of Konig Aff). RAND detailed specific defects relating to the pipe insulation system and the roof, railings, door clearances and sprinkler systems in its reports (NYSCEF # 116 ¶¶ 20, 22; NYSCEF # 120, RAND Prelim. Report; NYSCEF #s 122 & 123, RAND Report Parts 1 and 2).

Charles spent more than $2 million to investigate and remediate the construction defects (NYSCEF # 116, ¶¶ 52-53; NYSCEF # 140, Settlement Agreement Between Plaintiff & Condominium Board; NYSCEF # 141, Amendment to Condo Offering Plan). Moreover, Charles was required "to suspend all the

**657040/2019  CHARLES CONDOMINIUMS, LLC vs. VICTOR RPM FIRST, LLC**
**Motion No. 005**

marketing and sale of Condominium units" for approximately 17 months (from July 2016 to November 2017) so that the defects could be repaired and appropriate disclosures could be filed with the New York Attorney General (NYSCEF # 116 ¶¶ 62-64; NYSCEF # 141). Charles avers that it missed opportunities to sell the six unsold units at favorable prices because of the 17-month suspension (NYSCEF # 116 ¶¶ 65-69; NYSCEF # 142, Sales Analysis).

Charles filed a complaint on November 26, 2019 (NYSCEF # 1), and on July 14, 2023, moved for partial summary judgment as to Victor's contractual liability for defective construction of the Project under the Development Agreement (NYSCEF # 115). Victor argues that the motion should be denied as premature since no meaningful discovery has been conducted (NYSCEF # 170, Deft Opp, at 1).

## Discussion

In moving for partial summary judgment as to Victor's liability for breach of the Development Agreement, Charles argues that it meets the prima facie burden to demonstrate (i) the existence of construction defects, (ii) that those defects caused damages, and (iii) that Victor had contractual responsibility for those defects (NYSCEF # 147, Pltf MOL at 12). Charles avers that it is undisputed that the project was constructed in a defective manner that caused damage to Charles (*id.* at 13-14). Charles further argues that the Development Agreement unambiguously made Victor solely responsible for the proper supervision and construction of the Project (*id.* at 15-23).

Victor counters that Charles' motion is premature because no meaningful discovery has been conducted (NYSCEF # 170 at 1). Victor argues that (i) the contractual provisions of the Development Agreement are ambiguous, and (ii) the extrinsic evidence demonstrates that Victor bore no responsibility for causing, remediating, or funding the purported construction defects (*id.* at 15-20).

Specifically, Victor asserts that the pertinent provisions of the Development Agreement are susceptible to more than one interpretation. According to Victor, words in the Development Agreement such as "perform," "cause," and "supervise," impose on Victor obligations to facilitate timely performance of the construction and coordinate activities among parties, but not responsibility for the quality of the Project work. Charles by contrast avers that those words indicate that Victor bears the responsibility for the construction quality (*id.* at 14).

Victor further avers that extrinsic evidence indicates that other participants of the Project, including Leyva Architects, P.C. (ILA), Triton Construction, LLC (Triton), Charles' engineering consultants and special inspectors, and Triton's subcontractor were responsible for the quality of the design, construction, and inspection of the Project (*id.* at 20).

**657040/2019   CHARLES CONDOMINIUMS, LLC vs. VICTOR RPM FIRST, LLC**
**Motion No.  005**

**Page 3 of 6**

[* 3]

In reply, Charles argues, *inter alia*, that (i) Victor's obligations to "undertake," "complete," "perform," and "supervise" the construction are unambiguous; (ii) Victor's resort to extrinsic evidence is unavailing because the Development Agreement is unambiguous and the extrinsic evidence cannot create an ambiguity; and (iii) the involvement of other parties does not eliminate Victor's liability for the Project's quality (NYSCEF # 172, Pltf Reply, at 2-9).

As explained below, Charles' motion for partial summary judgment is denied.

A. Summary Judgment Standard

Under CPLR 3212, "[t]he proponent of a motion for summary judgment must establish that there are no material issues of fact in dispute and that it is entitled to summary judgment as a matter of law" (*Mazurke v Metropolitan Museum of Art*, 27 AD3d 227, 228 [1st Dept 2006]). Once a movant makes its prima facie showing, the burden shifts to the opposing party to produce evidentiary proof sufficient to raise an issue of fact *(CitiFinancial Co. (DE) v McKinney*, 27 AD3d 224, 226 [1st Dept 2006]).

When resolving a motion for summary judgment, the court must view facts in a light most favorable to the non-moving party (*see Vega v Restani Constr. Corp.*, 18 NY3d 499, 503 [2012]). In the presence of a genuine issue of material fact, a motion for summary judgment must be denied (*see Rotuba Extruders v Ceppos*, 46 NY2d 223, 231 [1978]; *Grossman v Amalgamated Haus. Corp*, 298 AD2d 224, 226 [1st Dept 2002]).

B. Breach of Contract

Written agreements are construed in accordance with the parties' intent and "[t]he best evidence of what parties to a written agreement intend is what they say in their writing" (*Schron v Troutman Sanders LLP*, 20 NY3d 430, 436 [2013], quoting *Greenfield v Philles Records,* 98 NY2d 562, 569 [2002] [internal quotation marks and citation omitted]). As such, "a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms" (*id.*). The agreement should be read as a whole to determine its purpose and intent, and it should be construed to give effect and meaning to all provisions (*W.W.W. Assocs., Inc. v Giancontieri*, 77 NY2d 157, 162 [1990]).

Whether a writing is ambiguous is a "question of law to be resolved by the courts" (*id.*). A "contract is unambiguous if the language it uses has a definite and precise meaning, unattended by danger of misconception in the purport of the [agreement] itself and concerning which there is no reasonable basis for a difference of opinion" (*White v Continental Cas. Co.*, 9 NY3d 264, 267 [2007], quoting *Greenfield,* 98 NY2d at 569). Conversely, a contract is ambiguous if "language is susceptible of two reasonable interpretations" (*Ladder Cap. Fin. LLC v 1250 N. SD Mezz LLC*, 211

657040/2019   CHARLES CONDOMINIUMS, LLC vs. VICTOR RPM FIRST, LLC
Motion No.  005

Page 4 of 6

4 of 6

AD3d 608 [1st Dept 2022], quoting *Ellington v EMI Music, Inc.,* 24 NY3d 239, 244 [2014] [internal quotation marks omitted]).

Resort to extrinsic evidence is appropriate to resolve an ambiguity in contractual language to determine the parties' intent (*LDIR, LLC v DB Structured Prod., Inc.,* 172 AD3d 1, 5–6 [1st Dept 2019]; *330 W. 86th St., LLC v City of New York,* 68 AD3d 562, 563–64 [1st Dept 2009] ["Resolution of … ambiguities (in a deed) must await discovery as to the intent of the parties"]; *Federal Ins. Co. v Americas Ins. Co.,* 258 AD2d 39, 43 [1st Dept 1999] ["Where … internal inconsistencies in a contract point to ambiguity, extrinsic evidence is admissible to determine the parties' intent"]). Parties may not use extrinsic evidence to create an ambiguity in the agreement (*Sterling Res. Int'l, LLC v Leerink Swann, LLC,* 92 AD3d 538, 539 [1st Dept 2012]).

Here, there is no dispute that the Condominium is defective. The key disputed issue is whether the Development Agreement unambiguously assigns responsibility to Victor for the quality of the Project, and, if ambiguous, whether the parties' extrinsic evidence is admissible and resolves the ambiguity. The Court agrees with Victor that it is premature to conclude the Development Agreement is unambiguous, but for different reasons.

To determine whether Victor is responsible for the quality of the Project, the analysis starts from the plain meanings of keywords in the Development Agreement. One provision the parties focus on is § 5(b), under which Victor is "solely responsible for the *supervision* of all of the Project Work" (NYSCEF # 118, § 5(b) [emphasis added]). The Cambridge Dictionary defines "supervise" to mean "to watch a person or activity to make certain that everything is done correctly, safely, etc." and "to be responsible for the good performance of an activity or job".[1] There is no reason why the unambiguous term "supervise" should not be construed according to its plain, ordinary meaning such that Victor is responsible for making certain that everything is done correctly.

The Third WHEREAS Clause clarifies that "doing things correctly" refers to "undertak[ing] and *complet[ing]* all tasks necessary to construct" the Project (NYSCEF # 118, Third WHEREAS Clause [emphasis added]). Section 5(a) similarly binds Victor to "promptly cause the commencement and diligent continuance of the construction of the Project Work . . . until *completion*" (*id.* § 5(a) [emphasis added]). Section 5(d) of the Development Agreement defines "complete" as "when all of the conditions specified in the definition of 'Complete the Project' in the Construction Loan Documents have been met" (*id.,* § 5(d)). In short, to supervise the Project, Victor should complete all tasks, and to complete those tasks, Victor should meet the conditions in in Construction Loan Documents.

---

[1] "Supervise." Cambridge Online Dictionary, https://dictionary.cambridge.org/us/dictionary/english/supervise (retrieved February 24, 2024).

657040/2019   CHARLES CONDOMINIUMS, LLC vs. VICTOR RPM FIRST, LLC
Motion No.  005

Page 5 of 6

However, the parties did not file those Construction Loan Documents in any obvious place on the docket. Without those documents, the Court cannot determine the meaning of "complete" in the Agreement and Victor's specific contractual obligations under this provision. To the extent this creates an ambiguity, that ambiguity can only be resolved by reference to the Construction Loan Documents, not to the other extrinsic evidence cited by Victor. As such, there is a material dispute of fact, and discovery is necessary to determine what the parties intend the word "complete" to mean, and therefore whether Victor in fact is liable for breach of the Agreement.

That said, since the Development Agreement unambiguously assigns sole responsibility for supervision of the work to Victor, Victor's assertion that the defects are caused by other participants, such as Triton and ILA, cannot stand (*see Rite Aid of New York, Inc. v Beach 109th Street Associates, LLC*, 2011 WL 11074350, *2 [Sup Ct, NY County, Mar. 11, 2011, index No. 107705/2010] ["The assertion that whatever defects exist are the result of directions given by agents of plaintiff during construction cannot stand in view of the provisions (of the agreement) which assigns sole responsibility for supervision and direction of the work to defendant"]). Therefore, Victor, as the supervisor of the Project, is responsible for the construction defects (*see id.; see also Villamar v 13th and 14th Street Realty, LLC*, 2014 NY Slip Op 30652[U], *1 [Sup Ct, NY County 2014] [defendant Sponsor, who was responsible for construction, corrections, and repairs of a building under agreements, was responsible to make repairs to Plaintiffs' apartment and "may not disclaim liability" to its curtain provider, a third party to the case]). Whether this means Victor is *liable* for those defects will depend on the promised quality implied in the definition of "complete" under the Construction Loan Documents.

In conclusion, the missing definition of "complete" creates a material issue of fact as to the required condition of the finalized Project. Therefore, Charles is not entitled to the partial summary judgment.

Accordingly, it is ORDERED that plaintiff's motion for partial summary judgment against Victor RPM First, LLC for liability for breach of contract (MS005) is denied.

|  |  |
|---|---|
| **4/5/2024** | |
| **DATE** | **MARGARET A. CHAN, J.S.C.** |

| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|---|
| | | GRANTED | X DENIED | | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | REFERENCE |

657040/2019 CHARLES CONDOMINIUMS, LLC vs. VICTOR RPM FIRST, LLC
Motion No. 005

Page 6 of 6